TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-94-00043-CR








Robert Sterling Miller, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT


NO. CR92-237, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING








 This appeal is taken from a conviction for aggregated felony theft where the value
of the legal currency of the United States stolen was more than $20,000. Tex. Penal Code Ann.
§§ 31.03(a), (b), 31.09 (West 1994). (1) The offense was a second degree felony at the time of its
commission. (2) After the jury found appellant Robert Sterling Miller guilty, it assessed his
punishment at 16 years' imprisonment and a fine of $10,000.



VALIDITY OF INDICTMENT


 Appellant advances fifteen points of error. First, appellant contends that the
"verdict in this cause cannot be sustained because appellant was tried without the authority of a
proper indictment which violates Art. I, § 10 of the Texas Constitution." The original indictment
was quashed or set aside by the first trial judge. The State attempted to amend the indictment and
got as far as obtaining a court's order approving the amendment, but the indictment was not
effectively amended by making the alterations on the face of the indictment as required. Ward
v. State, 829 S.W.2d 787, 793 (Tex. Crim. App. 1992).

 The scenario of the instant case is somewhat unusual. On September 2, 1992, the
indictment was presented. In pertinent part, it alleged that appellant:



On or about 1st day of June, A.D., 1991, and up to and including the 30th day of
June, A.D., 1992, and before the presentment of this indictment, in the County and
State aforesaid, did then and there knowingly appropriate, by acquiring and
exercising control over, property, to-wit: LEGAL CURRENCY OF THE
UNITED STATES, of the value of more than $20,000.00 from the owner, DAN
FRITZ, MIDWAY MOBILE HOMES, 974 LOOP 337, New Braunfels, Comal
County, Texas, without the effective consent of the owner and with intent to
deprive said owner of the property:


AND ALL OF SAID AMOUNTS WERE OBTAINED, as alleged in one scheme
and continuing course of conduct, and the aggregate amounts stolen was of the
value of at more than $20,000.00; . . . . (3)



 On March 30, 1993, the trial court conducted a hearing on appellant's first
amended motion to quash or set aside the indictment. In that motion, appellant contended, inter
alia, that the indictment failed to inform him of the nature and cause of the accusation against him
as required by article I, section 10 of the Texas Constitution. In addition, appellant urged that
the indictment (1) was not in plain and intelligible language; (2) did not allege an offense; (3) did
not follow the language of section 31.09 of the Texas Penal Code; (4) did not allege the essential
acts necessary to constitute a violation of that statute; and (5) that any conviction based on the
indictment could not be used in a plea in bar to a subsequent prosecution for the same offense
because each theft allegation must be separately alleged in order to be used in aggregation under
section 31.09.

 At the conclusion of the hearing on the motion, the trial court granted the motion
to quash or set aside the indictment. The court's order contained a notation about the need to
amend to show dates [sic] specific amounts taken." If a record was made of the hearing, no
statement of facts appears in the appellate record. Thus, the basis for the trial court's ruling is
not altogether clear. (4)

 On April 13, 1993, the State filed a motion for leave to file an amended indictment. 
On the same date, the trial court granted the motion and ordered the indictment to be amended. 
The proposed amendment contained in the trial court's order alleged in pertinent part that Robert
Sterling Miller on or about July 1, 1991 and up to and including May 31, 1993:



did then and there knowingly appropriate, by acquiring and exercising control
over, property, to-wit: LEGAL CURRENCY OF THE UNITED STATES, of the
value of more than $20,000.00, from the owner, DAN FRITZ, MIDWAY
MOBILE HOMES, 974 LOOP 337, New Braunfels, Comal County, Texas,
without the effective consent of the owner and with intent to deprive said owner
of the property, to wit:


JULY 1ST TO JULY 31ST, 1991, theft over $750.00 but less than $20,000.00;


AUGUST 1ST TO AUGUST 31ST, 1991, theft over $20,000.00 but less than
$100,000.00;


SEPTEMBER 1ST TO SEPTEMBER 30TH, 1991, theft over $750.00 but less
than $20,000.00;


OCTOBER 1ST TO OCTOBER 31ST, 1991, theft over $750.00 but less than
$20,000.00;


NOVEMBER 1ST TO NOVEMBER 30TH, 1991, theft over $750.00 but less than
$20,000.00;


DECEMBER 1ST TO DECEMBER 31ST, 1991, theft over $20,000.00 but less
than $100,000.00;


JANUARY 1ST TO JANUARY 31ST, 1992, theft over $750.00 but less than
$20,000.00;


FEBRUARY 1ST TO FEBRUARY 28TH, 1992, theft over $750.00 but less than
$20,000.00;


MARCH 1ST TO MARCH 31ST, 1992, theft over $750.00 but less than
$20,000.00;


APRIL 1ST TO APRIL 30TH, 1992, theft over $750.00 but less than $20,000.00;


MAY 1ST TO MAY 31ST, 1992, theft over $750.00 but less than $20,000.00;


AND ALL OF SAID AMOUNTS WERE OBTAINED PURSUANT TO ONE
SCHEME AND CONTINUING COURSE OF CONDUCT WHICH BEGAN ON
OR ABOUT THE 1ST DAY OF JULY, A.D., 1991, AND CONTINUING
UNTIL ON OR ABOUT THE 31ST DAY OF MAY, 1992.



 The face of the original indictment was never physically altered in any manner.
Appellant filed a second motion and a third motion to quash the indictment directed at the
proposed amendment, neither of which questioned the finality of the proposed amendment. We
do not find a ruling on the second motion, but the third motion was overruled.

 On November 8, 1993, the district attorney read to the jury the original indictment
which had been set aside. Appellant entered a plea of not guilty, but immediately objected, in the
jury's absence, that the indictment had not alleged separate theft offenses as required for
aggregation under section 31.09, and that the dates were not distinctly alleged. The district
attorney informed the trial court that these objections had been raised in three motions to quash
the indictment "all of which were denied." At the time, no one bothered to tell the trial court that
the original indictment had been set aside by another trial judge or that the State had attempted
an amendment of the indictment. The trial court overruled appellant's objections to the
indictment.

 After the State's second witness had testified, the district attorney informed the trial
court that a secretary had pointed out to him that a motion for leave to amend the indictment had
been filed. He asked to examine the court's file to determine if the motion had been granted. 
Finding the order granting leave and ordering an amendment, the district attorney asked to read
this order to the jury. Appellant objected that the jury had been impanelled, the indictment had
been read, a plea had been entered, and that evidence had been heard. He argued that jeopardy
had attached. The district attorney responded that the indictment had been quashed, "eradicated
for all purposes," that any reading thereof was "a totally ineffective reading of the indictment,"
and that double jeopardy would not attach to "an invalid or nonexistent instrument." The trial
court overruled the objection and permitted the district attorney to read to the jury as the State's
pleading the court's order approving the amendment to the indictment. Appellant again pleaded
not guilty. Both parties stipulated that the testimony of the first two witnesses would be the same. 
At the conclusion of the guilt stage of the trial, the trial court submitted the case to the jury on the
basis of the trial court's pretrial order approving the amendment to the indictment. The jury
returned a verdict finding appellant guilty "as charged in the indictment."

 In Ward, the Court of Criminal Appeals held that an amendment of a charging
instrument requires the actual alteration in the charging instrument itself. Ward, 829 S.W.2d at
793; Harris v. State, 866 S.W.2d 316, 324 (Tex. App.--San Antonio 1993, pet. ref'd). If the State
wishes to amend the pleadings, it must first request the trial court's permission by a "motion for
leave to amend." Ward, 829 S.W.2d at 793. But neither the motion nor the trial court's
subsequent order granting the motion and setting forth the proposed amendment is "the
amendment." Id. "The amendment . . . is the actual alteration of the charging instrument." Id.;
see also Rent v. State, 838 S.W.2d 548, 551 (Tex. Crim. App. 1992); McHenry v. State, 829
S.W.2d 803, 804 (Tex. Crim. App. 1992); McCoy v. State, 889 S.W.2d 354, 358 (Tex.
App.--Houston [14th Dist.] 1994, pet. ref'd); Harris, 866 S.W.2d at 324; Brown v. State, 843
S.W.2d 709, 715 (Tex. App.--Dallas 1992, pet. ref'd); McFarland v. State, 834 S.W.2d 481, 483-84 (Tex. App.--Corpus Christi 1992, no pet.).

 The requirement of an actual alteration on the face of the indictment or information
is consistent with the state constitutional guarantee that an accused has the right to be informed
of the nature and cause of the accusation against him. Tex. Const. art. I, § 10; Ward, 829
S.W.2d at 794. It has long been held that this information must come from the face of the
indictment. See, e.g., Benoit v. State, 561 S.W.2d 810, 813 (Tex. Crim. App. 1977). It is, of
course, not sufficient to say that the accused knew with what offense he was charged, but the
inquiry must be whether the charge in writing furnished that information in plain and intelligible
language. Id. Thus, concluding that "amendment" means an actual alteration to the document
charging an offense assures an accused of his constitutional right to be informed, from the face
of the charging instrument, of the nature and cause of the accusation against him. Ward, 829
S.W.2d at 794. The original indictment in the instant case could have been amended, but it was
not properly and legally amended.

 The Code of Criminal Procedure expressly provides for a motion to set aside an
indictment. Tex. Code Crim. Proc. Ann. art. 27.03 (West 1989). Thus, a trial court may, on
the motion of a defendant, set aside, quash, or dismiss an indictment or information for a defect
of form or substance. See State v. Fass, 846 S.W.2d 934, 935 (Tex. App.--Austin 1993, no pet.);
State v. Pierce, 816 S.W.2d 824, 830-31 (Tex. App.--Austin 1991, no pet.). In the instant case,
as noted, the trial court, after a hearing, granted appellant's first amended motion to quash the
indictment. The terms "set aside" and "quash" are synonymous in their common meaning: "to
vacate, to annul, to make void." Byron Garner, A Dictionary of Modern Legal Usage, 457, 498
(1987); Black's Law Dictionary, 1245, 1372 (6th Ed. 1990); Moreno v. State, 807 S.W.2d 327,
329 n.2 (Tex. Crim. App. 1991); State v. Eaves, 800 S.W.2d 220, 221 n.5 (Tex. Crim. App.
1990); Pierce, 816 S.W.2d at 830. An order quashing or setting aside a charging instrument
effectively terminates or dismisses a prosecution whenever the order requires an alteration of the
charging instrument or the filing of a new charging instrument. Moreno, 807 S.W.2d at 334;
Eaves, 800 S.W.2d at 224. The fact that an order quashing the indictment may have been based
upon an erroneous interpretation of the applicable law in no way affects the validity of the order
to quash. A trial court lacks the jurisdiction to rescind the order quashing the indictment. 
Prochazka v. State, 878 S.W.2d 230, 232 (Tex. App.--Corpus Christi 1994, no pet.); see also
Garcia v. Dial, 596 S.W.2d 524, 528 (Tex. Crim. App. 1980).

 The State has the right to appeal an order granting the motion to quash the
indictment when the felony prosecution had been terminated thereby. Tex. Code Crim. Proc.
Ann. art. 44.01(a)(1) (West Supp. 1995); Moreno, 807 S.W.2d at 334. The State may also seek
a new indictment from the grand jury if the statute of limitations has not run, or attempt to secure
a felony information. Tex. Code Crim. Proc. Ann. art. 1.141 (West 1979); King v. State, 473
S.W.2d 43 (Tex. Crim. App. 1971). If the trial court has held in abeyance its order granting the
motion to quash the indictment, the State may amend the indictment. See Tex. Code Crim. Proc.
Ann. art. 28.10 (West 1989).

 In the instant case, the trial court granted a pretrial order to quash which vacated
the original indictment and rendered it void. We need not decide whether, under these
circumstances, a proper amendment can legally breathe life back into a void indictment. Cf.
Garcia, 596 S.W.2d at 528. This is so because the proposed amendment never made its way onto
the face of the indictment as required by Ward.

 Nevertheless, the State argues that appellant did not preserve error regarding the
indictment. Reliance is placed on article 1.14(b) which provides that if a defendant does not
object to a defect, error, or irregularity as to form or substance in an "indictment," he waives and
forfeits the right to object on appeal or in any other post-conviction proceeding. Tex. Code Crim.
Proc. Ann. art. 1.14(b) (West Supp. 1995); Ex parte Matthews, 873 S.W.2d 40, 41 (Tex. Crim.
App. 1994). Appellant did object to the original indictment and obtained a favorable ruling on
his motion to quash, so the State must limit its claim to the amending process. Article 1.14(b)
applies to an "indictment," not to a proposed amendment which has not arisen to the level of an
indictment. When the proposed amendment was offered in the midst of trial as a substitute
indictment, appellant did not object to any defect therein, but did object to the procedure being
used and claimed double jeopardy. Cf. Tex. Code Crim. Proc. Ann. art. 28.10(c) (West 1989)
(prohibiting amendment of indictment after trial commences if defendant objects). Most rights
and procedural matters may be waived, but jurisdictional matters may not be. Lackey v. State,
574 S.W.2d 97, 100 (Tex. Crim. App. 1978). In order to invest a court with jurisdiction over
a criminal case, a charging instrument must be filed with the court. See Tex. Const. art. V,
§ 12(b); see also McAfee v. State, 363 S.W.2d 941 (Tex. Crim. App. 1963); Thomas v. State, 751
S.W.2d 601, 602 n.3 (Tex. App.--Texarkana 1988, pet. ref'd); Whitehead v. State, 710 S.W.2d
643, 653 (Tex. App.--Beaumont 1986), rev'd on other grounds, 745 S.W.2d 374 (Tex. Crim. App.
1988). As we have seen, appellant's conviction was not based on a valid charging instrument. 
Appellant did not waive the jurisdictional matter by not objecting to the incomplete amendment
on that basis. The State's argument is without merit. Appellant was tried and convicted without
a valid indictment. Point of error one is sustained.



SUFFICIENCY OF THE EVIDENCE


 In view of Burks v. United States, 437 U.S. 1 (1978) and Greene v. Massey, 437
U.S. 19 (1978), a challenge to the sufficiency of the evidence should be considered before
disposing of an appeal even though reversal may be based on another ground. Selman v. State,
663 S.W.2d 838, 840 (Tex. Crim. App. 1984); Hooker v. State, 621 S.W.2d 597, 598 (Tex.
Crim. App. 1981) (op. on reh'g); Swabado v. State, 597 S.W.2d 361, 364 (Tex. Crim. App.
1980); Gonzalez v. State, 869 S.W.2d 588, 591 (Tex. App.--Corpus Christi 1993, no pet.). This
was done in Foster v. State, 635 S.W.2d 710, 717 (Tex. Crim. App. 1982), in which the
defendant's conviction was reversed because of a fatally defective indictment which (at the time)
deprived the court of jurisdiction. (5)

 In the instant case, appellant has raised the issue of the legal sufficiency of the
evidence to support the conviction as a matter of law. In point of error fourteen, appellant
generally contends that the evidence is insufficient to sustain the verdict. In point of error six,
appellant contends that there is a fatal variance between the evidence and the court's jury charge
regarding the issue of ownership of the legal currency taken.

 Appellate review of the legal sufficiency of the evidence is limited to determining
whether, in the light most favorable to the jury's verdict, a rational trier of fact could have found
beyond a reasonable doubt the essential elements of the crime charged. Jackson v. Virginia, 443
S.W.2d 307, 319 (1979); Villalon v. State, 791 S.W.2d 130, 132 (Tex. Crim. App. 1990). The
standard for review is the same in both circumstantial and direct evidence cases. Geesa v. State,
860 S.W.2d 154, 160-61 (Tex. Crim. App. 1991); Herndon v. State, 787 S.W.2d 408, 409 (Tex.
Crim. App. 1990).

 The jury is the trier of fact, the exclusive judge of the credibility of the witnesses
and of the weight to be given their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (West
1979); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Saxton v. State, 804
S.W.2d 910, 914 (Tex. Crim. App. 1991). The jury is free to accept or reject all or any part of
the evidence presented by either party. Saxton, 804 S.W.2d at 914; Beardsley v. State, 738
S.W.2d 681, 684 (Tex. Crim. App. 1987). Reconciliation of evidentiary conflicts is solely a
function of the trier of fact. Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). 
The jury may draw reasonable inferences and make reasonable deductions from the evidence. 
Benavides v. State, 763 S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd).

 It is not the reviewing court's duty to disregard, realign, or weigh the evidence. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The appellate court must
consider all the evidence, whether rightly or wrongly admitted. Nickerson v. State, 810 S.W.2d
398, 400 (Tex. Crim. App. 1991). If there is evidence that establishes guilt beyond a reasonable
doubt, and the trier of fact believes that evidence, an appellate court is not in a position to reverse
the conviction on the legal sufficiency of evidence grounds. Matson v. State, 819 S.W.2d 839,
846 (Tex. Crim. App. 1991).

 In reviewing the sufficiency of the evidence, the recent case of Fisher v. State, 887
S.W.2d 49 (Tex. Crim. App. 1994) is instructive. Fisher made some modifications to the Benson-Boozer line of cases dealing with the determination of evidentiary sufficiency. Garrett v. State,
749 S.W.2d 784, 802-03 (Tex. Crim. App. 1988); Boozer v. State, 717 S.W.2d 608 (Tex. Crim.
App. 1984); Benson v. State, 661 S.W.2d 708 (Tex. Crim. App. 1982) (op. on reh'g), cert.
denied, 467 U.S. 1219 (1984). Fisher made clear that in the case of an indictment that facially
alleges a complete offense, the reviewing court can adhere to the Benson principle of measuring
the sufficiency of the evidence by looking at the indictment as incorporated into the charge. 
Fisher, 887 S.W.2d at 55; Benson, 661 S.W.2d 715. This is the applicable rule regardless of
whether the indictment was facially complete originally or whether it was made facially complete
pursuant to a subsequent amendment. Fisher, 887 S.W.2d at 55.

 Moreover, in Fisher, the court stated:



 However, in the case of an indictment that does not facially allege a complete
offense, the reviewing court's sufficiency analysis must now take into consideration
not only the facially incomplete indictment, but also the controlling penal
provision, and the jury instruction. First, the reviewing court must ascertain from
the indictment what penal provision the indictment is based upon. At a minimum
the indictment must be sufficient to give notice of what offense the State is alleging
so that the controlling penal provision can be identified. Next, the reviewing court
must compare that penal provision with the jury instruction. The instruction
should allege all of the elements of the offense as set forth in the controlling penal
provision (including all of the elements alleged in the indictment, and any omitted
element in accordance with the controlling penal provision). Once it is established
that the jury instruction properly incorporates all of the essential elements of the
offense as set forth in the controlling penal provision, the reviewing court can
proceed to measure sufficiency of the evidence against the instruction given. Cf.
Benson, supra; Boozer, supra.


 We do not mean to suggest that an indictment which fails to specifically charge
or set forth all of the essential elements of an offense is constitutionally sound, but
only, as we held in Studer, that a defendant must object to substantive defects in
order to preserve error. In the case of an indictment that does not facially allege
a complete offense and was objected to as substantively defective, the defendant
will undoubtedly be entitled to a new trial based upon trial error for potentially any
number of issues, including lack of notice for due process purposes.



Fisher, 887 S.W.2d at 55-56 (emphasis in original) (footnotes omitted); see also Thomason v.
State, 892 S.W.2d 9 (Tex. Crim. App. 1994).

 The instant case does not involve either a facially complete or incomplete
indictment. The factual situation presented here is unique. (6) There are no valid State's pleadings. 
We have only a quashed indictment and a proposed amendment. This clouds the approach to be
used in determining the sufficiency of the evidence. Although Fisher did not involve an
ineffective amendment of an indictment, its rules are somewhat instructive. See also Flowers v.
State, 890 S.W.2d 906, 910 (Tex. App.--El Paso 1994, no pet. h.). The proposed amendment was
legally insufficient as an indictment in light of Ward. Nevertheless, the controlling penal
provisions are ascertainable therefrom. The trial court's charge to the jury tracked the proposed
amendment. The essential elements of the offense of aggregated felony theft were properly
incorporated in the jury instructions. The court's charge, unlike the charge in Fisher, did not
broaden the basis upon which the State could obtain a conviction. Therefore, we proceed to
measure the sufficiency of the evidence against the trial court's charge. Cf. Fisher, 887 S.W.2d
at 56.

 Some time prior to June 1991, Midway Mobile Homes, a corporation, opened a
business office in Comal County. The company advertised for an internal accountant. Appellant
applied for the position and was hired after being interviewed. It was later determined that many
of his assertions about his education, experience, and personal life were untrue. Appellant's
beginning salary was $27,500 annually. He was also given two company credit cards for use in
connection with his work.

 Sonja Frey, a certified public accountant, and Mike Sheppard, a Midway employee,
testified that the corporation was a financially healthy organization when appellant was hired. 
About April 13, 1992, Sheppard delivered $6,000 in cash to appellant in connection with a sale
made by Sheppard. Two days later, Sheppard had to further document the cash transaction and
noticed that appellant had pulled the deposit slip form from under a file basket, which was not
where such items were usually kept. Sheppard observed that the deposit slip had not been
validated to show that the cash had been deposited in the bank. Sheppard watched the deposit slip
for about a week until it disappeared from the company office. At this time, Sheppard talked to
Dan and Rexine Fritz, the "owners," about the situation. Sheppard called the company banks but
could not locate the deposit. Frey, the company's C.P.A., searched and could not locate the
deposit. When Frey and an attorney attempted to talk to appellant, he left the company office and
never returned.

 Frey then began an investigation and determined that a large amount of cash
belonging to Midway Mobile Homes had never been deposited in the bank during the period of
appellant's employment. In some instances, written deposit slips had been completed, but were
never validated by the bank. In other instances, a large sum of cash would disappear and a
validated deposit slip would be found listing a number of checks in small amounts that would
equal the sum of the missing cash. Frey was able to analyze appellant's personal bank accounts. 
For instance, she found a deposit of $6000 on April 15, 1992 to appellant's account no.
03507202. On April 16, 1992, $6000 was credited to appellant's bank account no. 15003574 as
a transfer from account no. 03507202. These transactions took place two or three days after
Sheppard gave $6000 in cash to appellant. Appellant's bank accounts contained much more
money than normal for a person whose annual salary was $27,500. Frey also discovered that
appellant wrote and deposited to himself unauthorized payroll checks from July 9, 1991 to May
19, 1992. According to Frey, more than $100,000 belonging to the company disappeared.

 In his testimony, appellant explained that he had other people's money in his bank
accounts. He kept accurate reports and notified these individuals in writing how much of their
money he had. One of the accounts was opened in the name of Sterling Miller using his mother's
social security number. Appellant was sure that if anything happened to him, his mother would
return the money belonging to other individuals. Appellant attempted to explain away most of the
transactions in which the taking of money was attributed to him by the State's evidence. He
related that he was not the only one making out deposit slips and depositing Midway's money in
the bank. It is obvious that the jury by its verdict rejected his explanations. In his general
challenge to the sufficiency of the evidence under point of error fourteen, appellant cites numerous
authorities concerning the proper standard for appellate review of the legal sufficiency of the
evidence, but presents little argument on the sufficiency of the evidence itself. (7) See Tex. R. App.
P. 74(f).

 Appellant contends under point of error six that the evidence is insufficient because
of a fatal variance "between the evidence and the charge." Appellant notes that the trial court's
charge to the jury authorized a conviction if, among other things, the jury found appellant had
acquired and controlled legal currency of the United States from "the owner, Dan Fritz, Midway
Mobile Homes." He argues that the evidence shows that Midway Mobile Homes was a
corporation and that the property involved belonged to the corporation. He contends that where
one person is alleged to own the property, but it is shown to be owned by another or by a
corporation, the State has failed to prove ownership as alleged. See Roberts v. State, 513 S.W.2d
870, 871 (Tex. Crim. App. 1974).

 A corporation can be the owner of property under the Penal Code. Tex. Penal
Code Ann. § 107(a)(35) (West 1994). Naming a corporation alone as the owner in an indictment
for theft of property is permissible. Middleston v. State, 476 S.W.2d 14, 17 (Tex. Crim. App.
1972); Skillern v. State, 890 S.W.2d 849, 874 (Tex. App.--Austin 1994, pet. ref'd). It is obvious,
however, that "a corporation cannot testify or give direct evidence of the lack of consent." Wells
v. State, 608 S.W.2d 200, 202 (Tex. Crim. App. 1980); Oggletree v. State, 851 S.W.2d 367,
370 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd). Therefore, when a corporation is the owner
of the property that has been stolen, it is preferable pleading practice to allege "special" ownership
in a natural person acting for the corporation. Harrell v. State, 852 S.W.2d 521, 523 (Tex. Crim.
App. 1993); Simpson v. State, 648 S.W.2d 1, 2 (Tex. Crim. App. 1983); Skillern, 890 S.W.2d
at 874; Harris v. State, 846 S.W.2d 960, 962 (Tex. App.--Houston [1st dist.] 1993, pet. ref'd).

 The statutory requirement (8) that the name of the owner from whom the property was
unlawfully taken be alleged in the indictment is a rule of pleading, not a part of the definition of
the offense of theft. Freeman v. State, 707 S.W.2d 597, 603 (Tex. Crim. App. 1986). The State,
having alleged ownership in the actual owner or a special owner, has the burden of proving
beyond a reasonable doubt the ownership allegation. Id.; Roberts, 513 S.W.2d at 872. The same
is true of the State's duty to prove the lack of consent. Wells, 608 S.W.2d at 201; Skillern, 890
S.W.2d at 875.

 "Owner" is defined as a person who (A) has title to the property, possession of the
property, whether lawful or not, or a greater right to possession of the property than the actor;
or (B) is a holder in due course of a negotiable instrument. Tex. Penal Code Ann. § 1.07(a)(35)
(West 1994). "Possession" means actual care, custody, control, or management. Tex. Penal
Code Ann. § 1.07(a)(39) (West 1994). Ownership may be proved in one of three ways: title,
possession, or a greater right to possession than the defendant. Inglehart v. State, 837 S.W.2d
122, 126 (Tex. Crim. App. 1992); Alexander v. State, 753 S.W.2d 390, 392 (Tex. Crim. App.
1988); Compton v. State, 607 S.W.2d 246, 250 (Tex. Crim. App. 1979).

 The trial court's jury charge tracked the allegation that "Dan Fritz, Midway Mobile
Homes" was the "owner" of the legal currency allegedly stolen. The evidence showed that Dan
Fritz was present at trial, but he did not testify because he had a "bad heart" and that testifying
would be hazardous to his health. There was proof that the corporation was the actual owner of
the stolen money. The company had been incorporated in 1979 by Fritz and his wife, Rexine. 
They were the owners of the company. Dan Fritz was president, and Rexine Fritz was vice-president and secretary-treasurer of the company at all pertinent times. Appellant in his testimony
admitted that Dan Fritz was president of the company, and that while employed he had been with
Dan Fritz when Fritz was transacting business for the corporation. Possession may be proved in
a prosecution by showing that the alleged owner controlled the property, but exclusive control of
the property need not be vested in the owner. Turner v. State, 636 S.W.2d 189, 193 (Tex. Crim.
App. 1981) (op. on reh'g); see also Sowders v. State, 693 S.W.2d 448, 451 (Tex. Crim. App.
1985). The evidence, both direct and circumstantial, showed Dan Fritz to be the special owner
and that he had possession of the money belong to the corporation. The proof clearly showed that
Dan Fritz had a right of possession of the company fund superior to any right of the appellant. 
There was no variance between the trial court's charge and the proof as claimed.

 Appellant does not, by separate point of error, raise the sufficiency of the evidence
to show lack of consent. This is included in his general challenge under point of error fourteen. 
In a theft prosecution, however, circumstantial evidence that the corporation or the alleged special
owner did not consent to the appropriation of its property may be sufficient to sustain the
conviction. See Wells, 608 S.W.2d at 202; Skillern, 890 S.W.2d at 874. Here, the evidence
showed that Dan Fritz did not consent to the taking of the money alleged. (9)

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that a rational trier of fact could have found all the essential elements of the offense. Points of
error six and fourteen are overruled. In view of our disposition of point of error one, we do not
reach the other points of error.

 The judgment of conviction is reversed and the cause is remanded to the trial court.



 

 John F. Onion, Jr., Justice

Before Justices Powers, B. A. Smith and Onion*

Reversed and Remanded

Filed: October 11, 1995

Publish







* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Although this cause arose before September 1, 1994, the code amendments effective on
that date did not alter the cited statutory provisions.
2.   Act of May 23, 1991, 72nd Leg., R.S., ch. 565, § 1, 1991 Tex. Gen. Laws 2003 (Tex.
Penal Code Ann. § 31.03(e)(5)(B), since amended).
3.   Former section 31.09 of the Texas Penal Code provided:


 When amounts are obtained in violation of this chapter pursuant to one
scheme or continuing course of conduct, whether from the same or several
sources, the conduct may be considered as one offense and the amounts
aggregated in determining the grade of the offense.
4.   Although aggregated theft under section 31.09 consists of two or more incidents of
theft, the statute makes them one offense. Graves v. State, 795 S.W.2d 185, 187 (Tex. Crim.
App. 1990); Brown v. State, 640 S.W.2d 275, 278 (Tex. Crim. App. 1982); see also Goodwin
v. State, 815 S.W.2d 586, 588 (Tex. Crim. App. 1991). This notion is buttressed by the fact that
there is no vehicle by which a defendant can compel a severance of the underlying offenses. 
Wages v. State, 573 S.W.2d 804, 806 (Tex. Crim. App. 1978). Thus, section 31.09 allows the
State to aggregate the separate incidents of theft into a single offense that defines conduct for
purposes of jurisdiction, punishment, and period of limitation from prosecution. Graves, 795
S.W.2d at 187; Vitiello v. State, 848 S.W.2d 885 (Tex. App.--Houston [14th Dist.] 1993, pet.
ref'd).


 Only when an indictment additionally alleges that the property was taken "pursuant to one
scheme or continuing course of conduct" does an indictment charge an aggregated theft under
section 31.09. Thomason v. State, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994); Whitehead v.
State, 745 S.W.2d 374, 376-77 (Tex. Crim. App. 1988); Turner v. State, 636 S.W.2d 189, 196
(Tex. Crim. App. 1980). This allegation is an element of the offense and must be included in the
indictment. Whitehead, 745 S.W.2d at 376. The original indictment in the instant case included
this element.


 One problem with the indictment seemed to concern the manner in which the incidents of
theft are to be alleged in an aggregated theft indictment. In Romine v. State, 722 S.W.2d 494,
499 (Tex. App.--Houston [14th Dist.] 1986), pet. ref'd, 747 S.W.2d 382 (Tex. Crim. App. 1988),
the court of appeals believed that the preferable method of pleading an aggregated theft is that set
forth in Cashion v. State, 657 S.W.2d 517, 518-19 (Tex. App.--Corpus Christi 1986, pet. ref'd). 
In Cashion, eleven third-degree felony theft offenses were aggregated to create a second degree
felony under section 31.09. The indictment commenced with the allegation that the various thefts
alleged were pursuant to one scheme and a continuing course of conduct, the essential element
discussed above. Thereafter, eleven separate paragraphs alleged the incidents of theft involved
giving on or about dates. The indictment in Cashion differed slightly and in form from the
indictments in Wages, 573 S.W.2d at 804-05 n.1 and Brown v. State, 640 S.W.2d 275, 277 (Tex.
Crim. App. 1982). In Wages and Brown, the allegation of one scheme and a continuing course
of conduct followed the allegations concerning the various incidents of theft rather than being
alleged early on in the indictments. The original indictment here did not allege the amounts which
were to be aggregated under section 39.01 or give the dates as to these various incidents. This
appeared to be a big factor in the trial court's decision to quash the indictment.
5.   Cf. Aguilar v. State, 846 S.W.2d 318 (Tex. Crim. App. 1993), discussing jurisdiction in
light of the 1985 amendments to article V, section 12, Texas Constitution and article 1.14(b) of
the Texas Code of Criminal Procedure.
6. [6]  Some of the difficulty apparently stems from the fact that no one at the trial level seemed
to have been aware of Ward and its progeny, although Ward was decided almost eighteen months
before appellant's November 1993 trial.
7.   Appellant simply argued that other persons had access to bank accounts and deposits
and deposit slips. He then added:


No one person testified that he/she had observed appellant do anything wrong
with the deposit slips and/or any currency. Trial testimony established that
Midway Mobile Homes was a financially troubled business apart and away
from any allegations against appellant. A major supplier had taken
bankruptcy. Midway could not pay a lot of creditors; Midway was involved
in multiple civil lawsuits. While strong suspicion was presented, the State had
insufficient evidence to prove its charges.
8.   Tex. Code Crim. Proc. Ann. art. 21.08 (West 1989).
9.   We do note that the State proved that more then $100,000 was taken. However, the
Court jury charges limited any conviction to a second degree felony. See Sanders v. State, 664
S.W.2d 705, 708 (Tex. Crim. App. 1982); Smith v. State, 573 S.W.2d 546, 547 (Tex. Crim.
App. 1978).




87 (Tex. Crim.
App. 1990); Brown v. State, 640 S.W.2d 275, 278 (Tex. Crim. App. 1982); see also Goodwin
v. State, 815 S.W.2d 586, 588 (Tex. Crim. App. 1991). This notion is buttressed by the fact that
there is no vehicle by which a defendant can compel a severance of the underlying offenses. 
Wages v. State, 573 S.W.2d 804, 806 (Tex. Crim. App. 1978). Thus, section 31.09 allows the
State to aggregate the separate incidents of theft into a single offense that defines conduct for
purposes of jurisdiction, punishment, and period of limitation from prosecution. Graves, 795
S.W.2d at 187; Vitiello v. State, 848 S.W.2d 885 (Tex. App.--Houston [14th Dist.] 1993, pet.
ref'd).


 Only when an indictment additionally alleges that the property was taken "pursuant to one
scheme or continuing course of conduct" does an indictment charge an aggregated theft under
section 31.09. Thomason v. State, 892 S.W.2d 8, 11 (Tex. Crim. App. 1994); Whitehead v.
State, 745 S.W.2d 374, 376-77 (Tex. Crim. App. 1988); Turner v. State, 636 S.W.2d 189, 196
(Tex. Crim. App. 1980). This allegation is an element of the offense and must be included in the
indictment. Whitehead, 745 S.W.2d at 376. The original indictment in the instant case included
this element.


 One problem with the indictment seemed to concern the manner in which the incidents of
theft are to be alleged in an aggregated theft indictment. In Romine v. State, 722 S.W.2d 494,
499 (Tex. App.--Houston [14th Dist.] 1986), pet. ref'd, 747 S.W.2d 382 (Tex. Crim. App. 1988),
the court of appeals believed that the preferable method of pleading an aggregated theft is that set
forth in Cashion v. State, 657 S.W.2d 517, 518-19 (Tex. App.--Corpus Christi 1986, pet. ref'd). 
In Cashion, eleven third-degree felony theft offenses were aggregated to create a second degree
felony under section 31.09. The indictment commenced with the allegation that the various thefts
alleged were pursuant to one scheme and a continuing course of conduct, the essential element
discussed above. Thereafter, eleven separate paragraphs alleged the incidents of theft involved
giving on or about dates. The indictment in Cashion differed slightly and in form from the
indictments in Wages, 573 S.W.2d at 804-05 n.1 and Brown v. State, 640 S.W.2d 275, 277 (Tex.
Crim. App. 1982). In Wages and Brown, the allegation of one scheme and a continuing course
of conduct followed the allegations concerning the various incidents of theft rather than being
alleged early on in the indictments. The original indictment here did not allege the amounts which
were to be aggregated under section 39.01 or give the dates as to these various incidents. This
appeared to be a big factor in the trial court's decision to quash the indictment.
5.   Cf. Aguilar v. State, 846 S.W.2d 318 (Tex. Crim. App. 1993), discussing jurisdiction in
light of the 1985 amendments to article V, section 12, Texas Constitution and article 1.14(b) of
the Texas Code of Criminal Procedure.
6. [6]  Some of the difficulty apparently stems from the fact that no one at the trial level seemed
to have been aware of Ward and its progeny, although Ward was decided almost eighteen months
before appellant's November 1993 trial.
7.   Appellant simply argued that other persons had access to bank accounts and deposits
and deposit slips. He then added: