TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00668-CR






Jessie Lemonte Jones, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NO. 19,223, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING






 A jury found appellant, Jessie Lemonte Jones, guilty of aggravated sexual assault of a child. 
Tex. Penal Code Ann. § 22.021 (a)(1)(B)(i), (a)(2)(B) (West Supp. 1998). The jury assessed punishment
at 20 years' confinement. By one point of error, appellant contends that the evidence is factually insufficient
to support the jury's verdict. We will affirm the trial-court judgment. 

 When conducting a factual sufficiency review, we do not view the evidence in the light most
favorable to the verdict. Instead, we consider all of the evidence equally, including the testimony of defense
witnesses and the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319 (Tex.
App.--Austin 1992, no writ). We will set aside a verdict for factual insufficiency only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd untimely filed). 


 The thirteen-year-old complainant testified that appellant had been living with her and her
mother, Helen Williams, for over a year. On May 1, 1996, they all moved from Brenham to Rockdale. 
On Sunday, May 5, she went to the Mayfest with Gwen Johnson. That evening, while her mother was
drunk on the couch, appellant molested her in her mother's bedroom by putting his penis in her vagina. The
complainant testified that appellant did the same thing the next day. She said that appellant threatened to
kill her if she ever told anyone they had sex.

 Gwen Johnson met the complainant, Williams, and appellant at the beginning of May and
helped them find a house trailer in Rockdale. A couple of days after they met, Williams stopped by
Johnson's residence seeking her help because the complainant had locked herself inside the trailer and
would not let Williams or appellant in. Johnson went over and found the complainant locked inside the
trailer. The complainant let Johnson in. Johnson started talking to the complainant who began "hollering
about look what he done did to me." The complainant was in a nightgown and Johnson thought semen was
running down her legs. The complainant told Johnson appellant had been having sex with her and that her
mother did not believe anything she said. Williams and appellant then entered the trailer. Williams told
Johnson to take her daughter home with her. Johnson testified that as she walked past appellant he
"smelled like [the complainant], like sex." Later in May, appellant was arrested at Johnson's house. 
Johnson testified that before the police told appellant the offense for which he was arrested, appellant said,
"I did not molest that child, have sex with that child, or what with that girl."

 Appellant testified that he had lived with Williams for the last five years. Appellant
contended that the complainant accused him of taking Williams's and her social security checks and
spending the money. Appellant explained that often, Williams would cash her check and then give him
money. Appellant denied ever having sex with the complainant or threatening her if she told anyone. 
Appellant thought the complainant was mad at him because she believed that he was taking her money and
her mother's money, and she did not want to see him with her mother. Appellant's version of his arrest
was contrary to Johnson's version. Appellant recalled that when he was placed under arrest, he did not
respond until after the officer told him the offense of which he was accused.

 Williams testified that she had been with appellant for five years. Williams acknowledged
that the complainant told her appellant was having sex with her but she did not believe the complainant.

 The jury is the exclusive judge of the credibility of the witnesses and the weight to be given
their testimony, and may accept or reject all or any part of the evidence. Flanagan v. State, 675 S.W.2d
734, 736 (Tex. Crim. App. 1984); Tex. Code Crim. Proc. art. 38.04 (West 1979). Reconciliation of
evidentiary conflicts is solely a function of the trier of fact. Miller v. State, 909 S.W.2d 586, 593 (Tex.
App.--Austin 1995, no pet.) (citing Bowden v. State, 628 S.W.2d 782, 787 (Tex. Crim. App. 1982)). 
The jury may draw reasonable inferences and make reasonable deductions from the evidence. Benavides
v. State, 763 S.W.2d 587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd). 

 The complainant testified about the details of the assaults. Appellant denied the incidents
and thought the complainant had made up the incidents because of her dislike for him. The complainant's
mother did not believe the complainant was telling the truth. Rather, she believed appellant did not commit
the assaults. In this case, the primary issue was the credibility of the witnesses. This was an issue within
the jury's province. In light of the evidence, we cannot substitute our view for that of the jury's. We do
not consider the jury's verdict clearly wrong or unjust. Appellant's sole point of error is overruled.

 The judgment of conviction is affirmed. 



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: March 26, 1998

Do Not Publish



k on the couch, appellant molested her in her mother's bedroom by putting his penis in her vagina. The
complainant testified that appellant did the same thing the next day. She said that appellant threatened to
kill her if she ever told anyone they had sex.

 Gwen Johnson met the complainant, Williams, and appellant at the beginning of May and
helped them find a house trailer in Rockdale. A couple of days after they met, Williams stopped by
Johnson's residence seeking her help because the complainant had locked herself inside the trailer and
would not let Williams or appellant in. Johnson went over and found the complainant locked inside the
trailer. The complainant let Johnson in. Johnson started talking to the complainant who began "hollering
about look what he done did to me." The complainant was in a nightgown and Johnson thought semen was
running down her legs. The complainant told Johnson appellant had been having sex with her and that her
mother did not believe anything she said. Williams and appellant then entered the trailer. Williams told
Johnson to take her daughter home with her. Johnson testified that as she walked past appellant he
"smelled like [the complainant], like sex." Later in May, appellant was arrested at Johnson's house. 
Johnson testified that before the police told appellant the offense for which he was arrested, appellant said,
"I did not molest that child, have sex with that child, or what