TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00408-CR






Reginald A. Diggs, Appellant




v.




The State of Texas, Appellee







FROM THE COUNTY COURT AT LAW OF COMAL COUNTY


NO. 96CR-697, HONORABLE FRED A. CLARK, JUDGE PRESIDING







 The trial court found appellant Reginald Diggs guilty of theft by check of property
valued at $20 or more but less than $500. See Tex. Penal Code Ann. §§ 31.03, 31.06 (West 1994
& Supp. 1999). The trial court sentenced appellant to 180 days in jail, probated for two years. 
By two points of error, appellant contends that (1) a variance existed between the charging
instrument and the evidence offered at trial and (2) the evidence was insufficient to support the
conviction. We will affirm the conviction.


Background


 On December 10, 1995, Patricia Wright, an employee of Westpoint Pepperell in
New Braunfels, accepted a check for $315.58 from a customer as payment for the purchase of
Ralph Lauren bedding. The check never cleared the bank because the checking account upon
which it was drawn had been closed. Wright testified that before she accepted the check she
looked at the customer's Texas Identification Card, wrote the customer's date of birth and
identification number on the check, compared the picture on the card with the customer, and
placed her initials on the check. This was consistent with the store's standard procedure for
accepting a check from a customer. Appellant's name appeared on the check and on the
identification card. Wright did not recall any discrepancies between the picture on the
identification card and the person presenting the check. Although Wright was unable to identify
appellant in court as the customer who gave her the check, she remembered the transaction
because the customer made several trips to the check-out counter returning each time with more
merchandise.

 Larry Bottenfield, the store manager of Westpoint Pepperell, also testified about
the store's standard procedures for cashiers accepting a check as payment for merchandise from
a customer. He also explained that if a customer's check does not clear the bank then someone
at the store makes a telephone call to the customer. If someone at the store is unable to speak with
the customer by telephone, then the store sends a certified letter to the address that appears on the
bad check. If the store receives no response to the certified letter, then the store turns the bad
check over to the county attorney for investigation. When the bank informed Westpoint Pepperell
that the check did not clear because the account had been closed, Bottenfield explained that the
store followed its standard procedures for addressing a bad check; the store attempted to reach
appellant by telephone and also sent a certified letter to appellant with no response. 

 Another employee of Westpoint Pepperell, Natalia Ortiz, positively identified
appellant as the same person who had been in the store on December 2, 1995, and purchased over
$800 of Ralph Lauren bedding. She remembered appellant being with a woman. She saw the
woman write the check and then give it to appellant to sign. Ortiz recalled the transaction with
appellant because he and the woman purchased an unusually large amount of Ralph Lauren
bedding. At trial, Ortiz identified appellant's sister as the woman who had accompanied appellant
when making the large purchase on December 2.

 Appellant testified at trial that he had never been to New Braunfels or Comal
County. He explained that in late November 1995, around Thanksgiving, he lost his wallet on a
Houston city bus. He believed someone used his identification to open the checking account on
which the $315.58 bad check was drawn. Appellant stated that the signature on the bank's record
opening the account on which the check at issue was drawn was not his signature. In fact,
appellant testified that while he has had a savings account in the past, he has never had a checking
account and has never written a check.

 Appellant's handwriting expert, Lillian Hutchinson, testified at trial that, after
reviewing samples of appellant's handwriting, it was her opinion that appellant could not have
written the $315.58 check. Randy Rubio, an investigator for the Comal County district attorney's
office who performs handwriting analyses, also reviewed appellant's handwriting. In Rubio's
opinion, appellant wrote the $315.58 check. 


Discussion


 By his first point of error, appellant contends that a variance existed between the
charging instrument and the evidence at trial. Specifically, appellant argues that he was charged
with theft by check of $315.58 worth of merchandise; however, the proof at trial showed only that
he was the customer at Westpoint Pepperell that signed a check for $806.20 on a different day. 
Appellant suggests that this was a fatal variance and that his conviction should be reversed. In
conjunction with his first point, appellant raises a second point of error contending that the
evidence was insufficient to show that he signed the $315.58 check at issue.

 The information charging appellant alleged that appellant, with intent to deprive the
owner of property, unlawfully appropriated merchandise from Westpoint Pepperell valued at
$315.58 without the effective consent of the owner and there issued and passed a check on the
Citizens National Bank for payment of the merchandise when appellant did not have sufficient
funds on deposit with the bank for full payment of the check. See Tex. Penal Code Ann.
§§ 31.03, 31.06 (West 1994 & Supp. 1999).

 In determining the sufficiency of the evidence to support a criminal conviction, the
question is whether, after viewing all the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim.
App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). The trier of fact, in this
case the trial court, is the exclusive judge of the credibility of witnesses and the weight to be given
their testimony and is free to accept or reject all or part of any witness's testimony. Adelman v.
State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The fact finder may draw reasonable
inferences and make reasonable deductions from the evidence. Benavides v. State, 763 S.W.2d
587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd). In this case, the trial court as the fact
finder also reconciles any evidentiary conflicts. Miller v. State, 909 S.W.2d 586, 593 (Tex.
App.--Austin 1995, no pet.) (citing Bowden v. State, 628 S.W.2d 782, 787 (Tex. Crim. App.
1982)).

 We conclude that the evidence was sufficient to support the verdict and
consequently no fatal variance existed between the charging instrument and the proof at trial. The
primary issue at trial was whether appellant was the customer who passed the $315.58 bad check
on December 10, 1995, at Westpoint Pepperell. The thrust of appellant's version of events was
that despite his name appearing on the check and on the identification card presented to Wright,
he was not the customer who gave Wright the check that day. According to appellant, he had lost
his wallet at the end of November 1995 and someone else used his identification information to
open the checking account upon which the $315.58 check to Westpoint Pepperell was drawn. 
While over 200 checks had been written out of this bank account and passed across the State, he
was not responsible for any of them. Documentary evidence presented to the trial court showed
that the bank account upon which the check was drawn was not opened in late November but
actually was opened on November 10, 1995. This was before the time period appellant stated that
someone else would have opened the account. The trial court, as fact finder in this case, was
responsible for weighing the evidence and was the exclusive judge of the witnesses' credibility. 
Just because a defendant presents a different version of the events does not render the evidence
insufficient. See Eaglin v. State, 872 S.W.2d 332, 337 (Tex. App.--Beaumont 1994, no pet.). 
The trial court simply could have rejected appellant's version of the incident and believed that
appellant opened the bank account in early November and passed the $315.58 bad check to
Westpoint Pepperell in exchange for the Ralph Lauren merchandise.

 The trial court was presented with conflicting evidence on the issue of whether
appellant's signature appeared on the $315.58 check. While appellant's expert testified that
appellant did not sign the check, the State's expert testified that he did. Again, the trial court was
responsible for resolving any conflicts in the evidence and could have chosen to disregard the
appellant's expert's opinion in favor of the State's expert's opinion. See Adelman, 828 S.W.2d
at 421. Sufficient evidence existed to support a finding that appellant signed the check.

 Finally, although Wright was unable to positively identify appellant in court as the
customer who gave her the $315.58 check on December 10, 1995, she was able to recall that at
the time of the offense she checked appellant's identification card and noticed no discrepancies
between the person presenting the check and the picture on the card. We conclude that the
evidence was sufficient to support the conviction and that a rational trier of fact could have found
beyond a reasonable doubt that on December 10, 1995, appellant presented the $315.58 bad check
in exchange for merchandise at Westpoint Pepperell. Point of error two is overruled.

 Having determined that the evidence supported the conviction, we also conclude
that there was not a variance between the information charging appellant and the proof at trial. 
Point of error one is overruled.


Conclusion


 The trial court's judgment is affirmed. 



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: May 6, 1999

Do Not Publish



all or part of any witness's testimony. Adelman v.
State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992). The fact finder may draw reasonable
inferences and make reasonable deductions from the evidence. Benavides v. State, 763 S.W.2d
587, 588-89 (Tex. App.--Corpus Christi 1988, pet. ref'd). In this case, the trial court as the fact
finder also reconciles any evidentiary conflicts. Miller v. State, 909 S.W.2d 586, 593 (Tex.
App.--Austin 1995, no pet.) (citing Bowden v. State, 628 S.W.2d 782, 787 (Tex. Crim. App.
1982)).

 We conclude that the evidence was sufficient to support the verdict and
consequently no fatal variance existed between the charging instrument and the proof at trial. The
primary issue at trial was whether appellant was the customer who passed the $315.58 bad check
on December 10, 1995, at Westpoint Pepperell. The thrust of appellant's version of events was
that despite his name appearing on the check and on the identification card presented to Wright,
he was not the customer who gave Wright the check that day. According to appellant, he had lost
his wallet at the end of November 1995 and someone else used his identification information to
open the checking account upon which the $315.58 check to Westpoint Pepperell was drawn. 
While over 200 checks had been written out of this bank account and passed across the State, he
was not responsible for any of them. Documentary evidence presented to the trial court showed
that the bank account upon which the check was drawn was not opened in late November but
actually was