TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00301-CR







Daniel Douglas, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0974432, HONORABLE JON N. WISSER, JUDGE PRESIDING








 A jury found appellant Daniel Douglas guilty of aggravated assault with a deadly
weapon. See Tex. Penal Code Ann. § 22.02(a) (West 1994). The trial court assessed punishment
at twenty years in prison. Appellant raises three points of error complaining that the evidence was
insufficient, there was error in the jury charge, and the trial court misread the indictment. We will
affirm the judgment of conviction.


Background


 In February 1997, Kiri Kalvaitis became friends with Carlos Garcia, Greg
Gonzales, James Gonzales, and appellant. The four men lived in a house at 2713 East Manor
Road in Austin. Kalvaitis visited the house frequently. Although Kalvaitis was friendly with all
four men, she was particularly attracted to Garcia. On several occasions Kalvaitis spent the night
at the house sleeping on a couch in Garcia's room. On the evening of March 19, 1997, Kalvaitis
phoned the house to tell Garcia that she was coming over. Appellant answered the phone and told
her that Garcia and his friends were in an argument and that it was not a good time for her to come
over. Appellant suggested that the two of them meet at the Manor Road coffeehouse where the
group often gathered. Kalvaitis met appellant at the coffeehouse for a few beers and the two went
back to the house. No one else was there when they arrived and they sat in the kitchen and talked
and had a few more beers. Greg Gonzales came home during the evening. Eventually Kalvaitis
wanted to go to sleep. Appellant wanted Kalvaitis to sleep in his room but she told him no. 
Instead, Kalvaitis went to sleep on the couch in Garcia's bedroom. Later that night, Kalvaitis
awoke to find appellant sitting on the couch holding a knife to her throat. He told her in an angry
voice, "you're going to do it my way." Kalvaitis screamed and was knocked unconscious by a
blow to the head. She awoke covered in blood. After viewing her head injury in the bathroom
mirror, she went to Greg Gonzales' room seeking help. He escorted her to the hospital emergency
room where she received twenty-six stitches in her head. 

 After the trip to the emergency room, Kalvaitis returned with Greg Gonzales to the
house to review the scene. Appellant was not there. Kalvaitis noticed a bloody metal tire iron
lying on the floor next to the couch which she believed appellant used to knock her unconscious. 
She also noticed a large knife lying beside the couch which she believed appellant held against her
throat when he threatened her. Neither of these items was there when she went to sleep. 



Discussion


 The indictment alleged that appellant 


intentionally, knowingly, and recklessly cause[d] bodily injury to Kiri Kalvaitis by
striking her with a metal tire tool, and . . . did then and there use and exhibit a
deadly weapon, to wit: a knife, that in the manner of its use and intended use was
capable of causing death and serious bodily injury during the commission of this
offense.



By three points of error appellant contends that (1) the evidence is insufficient to show that
appellant used a metal tire tool; (2) the charge allowed the jury to convict on a theory not alleged
in the indictment; and (3) the trial court misread the indictment and therefore appellant never
entered a proper plea to the indictment. 


Sufficiency of the Evidence

 In the first point of error appellant contends that the evidence is insufficient to
support the necessary finding that he used a "metal tire tool" to assault Kalvaitis. Appellant
argues that the item in question was not a metal tire tool, but rather was part of a tire jack stand. 
Appellant's automotive expert, George Rohrbough, testified that the item introduced as a tire tool
was in fact part of a safety jack used to lift a car while a person is working underneath the car and
was not a metal tire tool. Rohrbough described a tire tool as either of two implements--one would
be a cross-shaped lug nut wrench capable of removing four different sizes of lug nuts and the
second would be an L-shaped rod with one end capable of being placed in a jack to lift the car with
the other end capable of removing lug nuts. On cross-examination, however, Rohrbough testified
that a "jack" could be considered a tire tool. The prosecutor asked Rohrbough, "And this
particular item could be defined as a tire tool in the use of changing tires?" Rohrbough responded,
"It could be defined as a tire tool in conjunction with other tools." 

 In determining the sufficiency of the evidence to support a criminal conviction, the
question is whether, after viewing all the evidence in the light most favorable to the verdict, any
rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim.
App. 1991); Griffin v. State, 614 S.W.2d 155 (Tex. Crim. App. 1981). The jury is the exclusive
judge of the credibility of witnesses and the weight to be given their testimony and is free to accept
or reject all or any part of any witness's testimony. Adelman v. State, 828 S.W.2d 418, 421 (Tex.
Crim. App. 1992). The jury may draw reasonable inferences and make reasonable deductions
from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex. App.--Corpus Christi
1988, pet. ref'd). The jury reconciles any evidentiary conflicts. Miller v. State, 909 S.W.2d 586,
593 (Tex. App.--Austin 1995, no pet.) (citing Bowden v. State, 628 S.W.2d 782, 787 (Tex. Crim.
App. 1982)).

 The jury could decide which portion of the expert's testimony to believe. In
addition to the cross-examination testimony by Rohrbough that the tire jack could be considered
a tire tool, the jury was able to view the exhibit. Sufficient evidence exists to support the finding
that appellant used a metal tire tool in committing the offense. Point of error one is overruled.


Charge Error

 In point of error two, appellant contends that the trial court erred in charging the
jury about a deadly weapon. The indictment alleged appellant used a knife, that in "the manner
of its use and intended use was capable of causing death or serious bodily injury." The abstract
portion of the jury charge defined "deadly weapon" according to the complete statutory definition
as "anything manifestly designed, made, or adapted for the purpose of inflicting death or serious
bodily injury, or anything that in the manner of its use or intended use is capable of causing death
or serious bodily injury." See Tex. Penal Code Ann. § 1.07(a)(17) (West 1994). The application
portion of the jury charge tracked the language of the indictment but omitted the phrase relating
to the deadly weapon "that in the manner of its use and intended use was capable of causing death
or serious bodily injury." 

 Appellant contends that, based on the charge given, the jury could have convicted
him on a theory not alleged in the indictment. He contends that the charge expanded on the
allegations in the indictment related to a deadly weapon. Appellant argues that based on the
charge given, the jury could have found either that the knife (1) was designed, made, or adapted
for the purpose of inflicting death or serious bodily injury, or (2) in the manner of its use or
intended use was capable of causing death or serious bodily injury. Appellant failed to raise this
charge complaint before the trial court.

 Because appellant failed to raise this complaint as a trial objection, we must
determine (1) if error exists, and if so (2) was the error "so egregious and created such harm that
[appellant] has not had a fair and impartial trial." Almanza v. State, 686 S.W.2d 157, 173 (Tex.
1985) (opinion on rehearing). In determining whether egregious harm exists, any error must be
viewed in light of the entire jury charge, the state of the evidence, including the contested issues
and weight of the probative evidence, the argument of counsel and any other relevant information
contained in the trial-court record. Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998). 

 The State directs our attention to the jury charge given in Bonfanti v. State, which
also expanded the allegations in the indictment. 686 S.W.2d 149, 152 (Tex. Crim. App. 1985).
The Bonfanti charge instructed the jury that they could find the defendant guilty of aggravated
sexual assault by finding that the defendant either caused serious bodily injury or, as alleged in
the indictment, threatened death or serious bodily injury. Id. In reviewing the record, the
Bonfanti court held that the evidence of the defendant's guilt of committing aggravated sexual
assault by threatening death and serious bodily injury was overwhelming and uncontradicted. Id.
at 153. Moreover, during argument, neither the State nor the defense made an issue of either the
need for or lack of proof of bodily injury. Serious bodily injury was not an issue that was argued
or presented to the jury. Id. The Bonfanti court concluded that a jury would not have been misled
by the erroneous addition in the charge and that a rational jury would not have found the addition
a reasonable theory under which to convict the defendant. Id. The defendant received a fair and
impartial trial. See also Bishop v. State, 914 S.W.2d 200, 201 (Tex. App.--Beaumont 1995, pet.
ref'd) (no egregious error where indictment for aggravated sexual assault contained deadly weapon
manner-and-use language, however, jury charge general definition of sexual assault contained all
ways sexual assault may be aggravated and application paragraph in charge did not contain
manner-and-use language).

 First, we conclude that the trial court erred by expanding on the allegations in the
indictment. Next, we must determine the actual degree of harm in light of the entire charge, the
state of the evidence, the contested issues in the case, and other relevant information contained in
the trial-court record. See Bonfanti, 686 S.W.2d at 153; Bishop, 914 S.W.2d at 201. 

 The overwhelming weight of the evidence showed that appellant threatened
Kalvaitis with a knife. Kalvaitis testified that appellant placed the blade of the knife at her throat
and told her in an angry voice, "you're going to do it my way." Kalvaitis's testimony was not
contradicted or rebutted. In appellant's brief to this Court, he agrees with the State that the only
proof at trial pertained to the knife's "manner of use." Like Bonfanti, there was no evidence
presented that would have supported the additional theory that the knife was manifestly designed
to inflict serious bodily injury. During argument, neither the State nor the defense made an issue
of whether the knife was manifestly designed, made, or adapted for the purpose of inflicting death
or serious bodily injury. The State argued only the manner-and-use definition of deadly weapon
to the jury. The thrust of appellant's argument to the jury was that no knife existed. Appellant
never argued that a knife, manifestly designed to inflict death or serious bodily injury, was used. 

 A rational jury could not have been misled by the erroneous addition in the charge,
nor could it have found the addition a reasonable theory upon which to convict appellant. 
Appellant received a fair and impartial trial. Point of error two is overruled.


Misreading the Indictment

 In point of error three, appellant contends the trial court erred by proceeding to trial
without appellant's entering a proper plea to the indictment. Specifically, appellant complains for
the first time on appeal about the prosecutor's failure to read all of the indictment to the jury
before he entered his plea. He contends that while the prosecutor read most of the indictment to
the jury, the portion related to the knife, "that in the manner of its use and intended use was
capable of causing death or serious bodily injury," was not included. 

 The prosecutor's reading of the indictment to the jury is mandatory. See Tex. Code
Crim. Proc. Ann. art. 36.01(a)(1) (West Supp. 1999); Warren v. State, 693 S.W.2d 414, 415
(Tex. Crim. App. 1985). Failure to do so may constitute reversible error. Warren, 693 S.W.2d
at 416; Hinojosa v. State, 788 S.W.2d 594, 599 (Tex. App.--Corpus Christi 1990, pet. ref'd). 
Until the indictment is read and a defendant's plea entered, no issue is joined between the State
and the defendant. See Peltier v. State, 626 S.W.2d 30, 31 (Tex. Crim. App. 1981). However,
reversible error does not exist when no objection is raised at trial to the misreading of the
indictment. Craig v. State, 480 S.W.2d 680, 684 (Tex. Crim. App. 1972); Leal v. State, 711
S.W.2d 702, 708 (Tex. App.--Corpus Christi 1986, no pet.); Nolan v. State, 624 S.W.2d 721,
724 (Tex. App.--Amarillo 1981, no pet.). 

 Because appellant failed to raise an objection to the misreading of the indictment
before the trial court, he has not preserved this complaint for appeal. See also Warren, 693
S.W.2d at 416. Point of error three is overruled.


Conclusion


 Because we determine that the evidence is sufficient to support the finding that
appellant used a metal tire tool, that error occurring in the jury charge was not egregious, and that
appellant did not preserve his complaint about the misreading of the indictment for appeal, we
affirm the conviction.



 

 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Affirmed

Filed: May 6, 1999

Do Not Publish



 the contested issues in the case, and other relevant information contained in
the trial-court record. See Bonfanti, 686 S.W.2d at 153; Bishop, 914 S.W.2d at 201. 

 The overwhelming weight of the evidence showed that appellant threatened
Kalvaitis with a knife. Kalvaitis testified that appellant placed the blade of the knife at her throat
and told her in an angry voice, "you're going to do it my way." Kalvaitis's testimony was not
contradicted or rebutted. In appellant's brief to this Court, he agrees with the State that the only
proof at trial pertained to the knife's "manner of use." Like Bonfanti, there was no evidence
presented that would have supported the additional theory that the knife was manifestly designed
to inflict serious bodily injury. During argument, neither the State nor the defense made an issue
of whether the knife was manifestly designed, made, or adapted for the purpose of inflicting death
or serious bodily injury. The State argued only the manner-and-use definition of deadly weapon
to the jury. The thrust of appellant's argument to the jury was that no knife existed. Appellant
never argued that a knife, manifestly designed to inflict death or serious bodily injury, was used.