CR5-435.dd.kerr 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00435-CR







Kenneth Kerr, III, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0942557, HONORABLE LARRY FULLER, JUDGE PRESIDING







PER CURIAM


 A jury convicted Kenneth Kerr, III of aggravated sexual assault of a child and
indecency with a child. The victim was his six-year-old daughter, Ann. (1) After finding predicate
felony convictions, the jury assessed sentence at terms of seventy-five years' imprisonment for
each offense. We will reverse the conviction for aggravated sexual assault and render acquittal
on that offense. We will affirm the conviction and punishment for indecency with a child.

 The testimony at trial was a swirl of contradictions. The witnesses contradicted
each other, their own previous statements, and even their own trial testimony. Kerr challenges
the legal and factual sufficiency of the evidence to support his convictions by his first two points
of error. Before we reach those issues, we will determine whether Ann's videotaped statement
was properly before the jury.

 Kerr complains by point of error three that the admission of the videotape was
statutorily deficient because the evidence was hearsay and because the State did not meet three
requirements for its admission under the relevant hearsay exception. See Tex. Code Crim. Proc.
Ann art. 38.071 (West Supp. 1996). We can reverse for the admission of the videotape only if
the court clearly abused its discretion. Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App.
1994). We cannot reverse a judgment if the court's decision was within the zone of reasonable
disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on
reh'g). We can reverse only if a timely objection or motion to strike appears of record, stating
the specific ground of the objection (if the specific ground was not apparent from the context). 
Tex. R. Crim. Evid. 103(a)(1); see Zillender v. State, 557 S.W.2d 515, 517 (Tex. Crim. App.
1977).

 Kerr does not present reversible error because he did not raise a hearsay objection
against the admission of the videotape. Until evidence is barred as hearsay, the offeror need not
seek exception to that bar. Kerr's repeated objections regarding the State's noncompliance with
the requirements to trigger the exception did not serve as a broad hearsay objection or preserve
error on that issue. Our holding does not conflict with the rule that a general hearsay objection
is sufficient to preserve error on the failure to comply with the statutory requirements for the
outcry witness exception. See Long v. State, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990). In
Long, the court reasoned that a general hearsay objection impliedly included all exceptions to
hearsay. Here, however, since the videotape was never excluded, the State needed no exception
to inadmissibility, and objections to noncompliance with the exception's requirements were
superfluous. We overrule point three.

 Kerr challenges the sufficiency of the evidence by points of error one and two. (2) 
In determining the legal sufficiency of the evidence to support a conviction, the question is
whether, viewing all the evidence most favorably to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State,
614 S.W.2d 155 (Tex. Crim. App. 1981). In determining the factual sufficiency, we consider all
the testimony and evidence and can set aside a verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996). The jury is the exclusive judge of the credibility of the witnesses and
of the weight to be given their testimony; the jury may accept or reject all or any part of the
evidence. Miller v. State, 909 S.W.2d 586, 593 (Tex. App.--Austin 1995, no pet.). The jury also
may draw reasonable inferences and make reasonable deductions from the evidence. Id. The jury
can infer lascivious intent from surrounding circumstances and conduct. See McKenzie v. State,
617 S.W.2d 211, 216 (Tex. Crim. App. 1981).

 We evaluate the sufficiency of the evidence against the jury charge. Garrett v.
State, 749 S.W.2d 784, 802-03 (Tex. Crim. App. 1988). The court instructed the jury to find
Kerr guilty of aggravated sexual assault of a child upon finding beyond a reasonable doubt that
he "intentionally or knowingly cause[d] the penetration of the sexual organ of [Ann] a child
younger than 14 years of age and not his spouse, by [his] finger . . . ." The court instructed the
jury to find Kerr guilty of indecency with a child by contact upon finding beyond a reasonable
doubt that he "did then and there with the intent to arouse or gratify his sexual desire,
intentionally or knowingly engage in sexual contact by touching the genitals of [Ann], a child
younger than 17 years of age and not his spouse . . . ." A crucial part of that charge was the
instruction regarding the limited usefulness of impeachment evidence. The instruction provided:



You are instructed that witnesses may be impeached by showing that they have
made other and different statements out of court, or upon a former judicial
investigation of the facts, from those made before you on the trial. You may
consider such impeaching evidence, if any, as it may tend to affect the weight to
be given the testimony of the witnesses so impeached and their credibility (if it
does so); but such impeaching evidence, if any, is not to be considered by you as
tending to establish the alleged guilt of the defendant, or any fact in the case.



Much testimony at trial involved confrontation with prior inconsistent statements. (3)

 Jewell testified that she came home on the afternoon of September 26 to find Kerr
with Ann at her apartment complex pool. Jewell noticed during Ann's evening bath that Ann's
"bottom" was red (both Jewell and Ann referred to her vagina as her "bottom"). Jewell asked her
if Kerr had "bothered" her that day; Ann said yes, and that it hurt and burned. Kerr told Jewell
he did not molest Ann.

 Jewell testified that, as Howell drove Jewell and Ann home from Ann's school the
next day, Ann volunteered "what happened between [her] and Kenneth Kerr." Jewell testified that
"[t]he only thing I was aware of was that [Ann] said that he had rubbed her bottom." The bulk
of Jewell's testimony that followed was that Jewell did not recall what Ann said because Jewell
was not "consciously aware" of what Ann was saying. She did not recall Ann stating that Kerr
had put his finger in her vagina; when confronted with her own contrary police statement, Jewell
said she remembered making a statement to police, but did not recall its content. She also recalled
Ann saying that she was afraid to tell the story because she feared she would be spanked. After
the child's report of abuse, Jewell said they went to Howell's apartment to seek help regarding
the incident. Howell called the police. Jewell could not recall what happened thereafter except
that she talked to several police officers.

 On the videotape, made just days after the incident, Ann described how her father
put two fingers inside her clothes to rub her "bottom." She said he rubbed "around the hole" but
not in it. She told her mother and grandmother. Her grandmother then called the police.

 The State then called Ann to the stand. She testified that she just wanted to be a
family again with her dad and mom; her dad had been in jail for several months and her mom had
been detained a week before the trial to ensure that Jewell would appear at trial. Ann's testimony
on cross-examination varied from her testimony on the videotape. Kerr's attorney asked Ann if
she was aware that it had been said that her father had touched her in an inappropriate way. The
following exchange occurred:

A. If it has been, it is not the truth.


Q. It is not the truth?


A. (Shakes head negatively.)


Q. About a year ago or a couple of years ago when they took your daddy away,
you told some people that he had touched you in some wrong way. Was that
the truth?


A. Yes, but I wasn't thinking about what I was doing.


Q. You were thinking about when you were three?


A. (Nods head affirmatively.)



On redirect examination by the State, the following exchange occurred:



Q. Do you remember us talking this morning about the touch that your daddy did
to you?


A. Yes.


Q. Do you remember telling me that he touched you on your bottom?


A. Yes.


Q. And when you told me that he touched you on your bottom, you told me that
he used his fingers. Is that right? You have to answer, dear.


A. Yes.


Q. How did it feel?


A. It didn't actually hurt me. It just hurt my heart.



No time-frame was specified regarding this event, however.

 Howell denied that the child said anything regarding sexual abuse to her on the ride
home from school. Howell acknowledged calling the police that evening, but regarding her son's
abuse of drugs, not Ann. Howell agreed that she talked with police officers that evening about
Ann, but denied knowing anything about sexual abuse allegations. She said her son denied the
charges of sexual misconduct. She said that she talked with Ann about the indictment at
Christmas in response to her questions about why Kerr could not join the family for Christmas. 
Howell testified that she asked, "`Are you aware, [Ann], why your daddy can't be here?' And
she said she thought it was because daddy bothered her. And I said, `Are you ready to tell me
if he did or he didn't?' And she said, `Grandmother, he didn't.'"

 The police contradicted Howell's version of her distress call to them. The first
police officer on the scene testified that Howell discussed a sexual assault of Ann. An officer
assigned to the Austin Police Department's Child Abuse Unit testified that he was called to the
scene as part of the criminal investigation. He testified that he talked with Howell and Jewell
regarding the assault on Ann and later took Jewell's statement at the police station.

 Kerr took the stand and denied committing the offenses. He also denied committing
the previous offense of indecency with a child by contact. He testified that he pled guilty then to
spare his family the pain of trial. The instant offenses occurred about five months after his release
from the penitentiary after he served over two-and-one-half years for the previous indecency
offense. He spent time with Ann then, violating his conditions of release. On the day of the
incident, he took Ann swimming because she was in the way of Howell's packing; Howell was
moving away because she could not stand his drug abuse. He said that Jewell noticed that Ann
was suffering vaginal irritation and confronted him about whether he had molested Ann; he denied
touching her improperly, attributing the irritation perhaps to chlorine.

 Kerr said his mother told him she called the police to report his drug use. He said
he was driving to Longview to seek his father's financial help for drug abuse counseling and an
attorney. He said he knew that upon arrest the police would quickly learn his history as a sex
offender. He said, "I knew that last time what my child did was due to their manipulations and
accusations." He acknowledged his previous convictions for theft, burglary of a storage shed, and
credit card abuse.

 We find no evidence to support the penetration element of aggravated sexual
assault. Though a doctor testified that a person rubbing the outside of a vagina could commit the
requisite penetration of the sexual organ by passing between the labia without entering the vagina,
no one testified that such penetration occurred. Jewell, the outcry witness, stated to police that
Ann reported penetration, but the police report was not admitted into evidence. Jewell's
affirmation that she gave a true statement to police did not convert unadmitted impeachment
evidence into probative evidence. Ann's statement on the videotape that Kerr touched her "around
the hole" did not confirm the merest penetration. Because there is no evidence that Kerr's fingers
penetrated Ann's sexual organ, there is no evidence to support the conviction of aggravated sexual
assault. We sustain point of error one.

 By contrast, we find the jury had legally and factually sufficient evidence to convict
Kerr of indecency with a child. Ann's videotaped testimony provided straightforward evidence
of the elements of the indecency offense; that was not, however, the sole evidence of the offense. 
Amidst the denials, contradictions and lapsed memories, both Jewell and Ann testified before the
jury that Kerr touched Ann's genitals. Jewell's testimony regarding her observation of Ann's
irritated genital area and outcry leading to the summoning of police anchors the improper touch
to the date charged. The strong inference is that, when asked why her vagina was irritated, Ann
would not respond with a tale of an assault from three years earlier. The jury could have found
Jewell's testimony regarding the touching more credible than her inability to recall the details of
Ann's outcry. The jury could have rejected Howell's on-the-stand claim that she called 911 only
regarding her son's drug abuse in favor of the police officers' statements that she reported child
sexual abuse by her son. They likewise could have found incredible Kerr's statement that he
never committed an indecency offense; that squarely conflicts with Ann's unrecanted and
reasserted memory of the previous indecency offense as well as with the testimony regarding the
instant offense. His credibility already suffered from his previous convictions, his disregard for
his parole restrictions, and his concurrence with Howell's discredited version of the phone call. 
The jury could have discounted Ann's equivocations based on her stated fear that her report of
this abuse had caused and would cement the disintegration of her family. The jury could have
inferred that Kerr touched Ann with lascivious intent from such factors as her consequent
emotional pain, her reluctance to tell about the incident, the adults' unified but disputed story that
the 911 call was for drug abuse only, and his flight from the scene. The live testimony supplied
legally and factually sufficient evidence to support the conviction for indecency with a child; the
videotape supported this conclusion. We overrule the legal and factual sufficiency points of error
as they apply to the indecency conviction.

 By point of error four, Kerr asserts that the cumulation of the State's reliance on
impeachment evidence, hearsay, and the videotape combined to deprive him of his constitutional
right to due process. See Tex. Const. art. I, § 19. We disagree. We have found that the hearsay
error was unpreserved and that the admission of the videotape was not error. The court required
that the State call Ann to the stand following the showing of the videotape, thus allowing Kerr to
cross-examine her without risking the jury's wrath for calling the child to the stand. See Briggs
v. State, 789 S.W.2d 918, 922-24 (Tex. Crim. App. 1990). Kerr had and took the opportunity
to cross-examine Ann following the videotape and direct examination by the State. She gave
exculpatory testimony. The court gave his requested instruction on impeachment evidence. We
have found sufficient evidence to support his conviction. We do not find that the court deprived
Kerr of constitutional rights. We overrule point four.

 Kerr contends by point five that the jury improperly considered the effects of parole
in determining his sentence. The jury was instructed not to consider the manner in which parole
law might apply to Kerr. The jury nevertheless wrote a note to the court asking, "Is there a
difference in parole laws between a sentence of 99 years and life?" The court, after presenting
to the parties a proposed answer and hearing no objection, admonished the jury to follow the
instructions given in the court's charge.

 When determining whether jury's discussion of parole law merits reversal, we must
decide if the defendant proved that a juror professing to know the law asserted as fact a
misstatement of the law that other jurors relied upon to impose a harsher punishment. Lewis v.
State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995) (citing Sneed v. State, 670 S.W.2d 262, 266
(Tex. Crim. App. 1984)); Bass v. State, 830 S.W.2d 142, 148 (Tex. App.--Houston [14th Dist.]
1992, pet. ref'd) (applying Sneed test to jury's discussion of parole). Other factors include, but
are not limited to, whether the prosecutor urged the jury to consider parole, whether the jury
indicated it was considering parole law in deliberations, what punishment was assessed, whether
the jury impliedly rejected an application for probation, and whether a curative instruction was
given. Arnold v. State, 786 S.W.2d 295, 310-12 (Tex. Crim. App. 1990).

 The record does not show harmful error. There is no evidence other than the note. 
The record does not show why the jury submitted its question or what impact the court's curative
response had. It does not show if anyone made any representations about the effect of parole or
whether jurors changed their vote for a harsher punishment as a result of any such conversation. 
The record shows that prosecutors did not stress parole in voir dire or punishment-phase jury
argument. It shows that the jury found five predicate offenses (including the previous indecency
with Ann) when the applicable punishment range could have been invoked by the finding of
several different combinations of as few as two. It also shows that, though the note asked about
the difference between parole for a ninety-nine-year sentence and a life sentence, the jury assessed
a lesser sentence of seventy-five years, just more than three-fourths of the maximum term of
years. We overrule point five.

 With regard to count one, we reverse the judgment of conviction for aggravated
sexual assault and render a judgment of acquittal. With regard to count two, we affirm the
judgment of conviction for indecency with a child.


Before Justices Powers, Jones and B. A. Smith

Reversed and Rendered in Part; Affirmed in Part

Filed: September 11, 1996

Do Not Publish
1.   "Ann" is a pseudonym.
2.   Points of error one and two attack the sufficiency of the evidence without specifying
whether legal or factual; the substance of the point is that of a legal sufficiency point. By
a supplemental brief, Kerr makes it clear that he is also attacking the factual sufficiency.
3.   Some of the impeachment evidence came in without objection; some of it came in
with a contemporaneous limiting instruction. The court also gave the limiting instruction
in the jury charge. The impact of this instruction is unclear. Generally, if evidence
comes in without objection, it is admitted for all purposes and the court does not err by
refusing a limiting instruction in the charge. See Garcia v. State, 887 S.W.2d 862, 878 (Tex.
Crim. App. 1995). However, a court must give, if requested, limiting instructions both at the
time of the admission of the evidence and at the final jury charge. See Rankin v. State, No.
0374-94, slip op. at 9, 1996 WL 165104 at *6, n.3 ( Tex. Crim. App. April 10, 1996).



 the stand. See Briggs
v. State, 789 S.W.2d 918, 922-24 (Tex. Crim. App. 1990). Kerr had and took the opportunity
to cross-examine Ann following the videotape and direct examination by the State. She gave
exculpatory testimony. Th