Royce G. BINNION, Jr., Appellant

v.

The STATE of Texas, Appellee

NO. 01-15-00770-CR

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued June 29, 2017

Patrick F. McCann, Counsel for Appellant, 700 Louisiana, Ste 3950, Houston, Texas 77002, for Appellant.

Kim Ogg, District Attorney—Harris County, 1201 Franklin, Suite 600, Houston, TX 77002, Jessica Caird, Assistant District

Attorney, Harris County, Texas, 1201 Franklin, Suite 600, Houston, TX 77002, for Appellee.

Panel consists of Chief Justice Radack and Justices Keyes and Massengale.

## OPINION

Sherry Radack, Chief Justice

The trial court entered judgment on a jury verdict finding appellant Royce Binnion, Jr. guilty of aggregate theft of over $200,000 and assessing punishment at five years' confinement. We affirm.

## BACKGROUND

Most of the facts are not in dispute. Appellant worked for National Oilwell Varco (NOV), managing its Highway 90 plant. Appellant was authorized to purchase equipment for the plant without secondary approval for items costing less than $5,000.00.

In appellant's brief, he concedes the evidence at trial demonstrated that he falsified documents and used company funds to purchase personal items, but he argues that his bosses allowed him to do so to prevent him from reporting the company's illegal activities. As described in his brief, appellant also complains that there is insufficient evidence that Brad Ortego—the complainant who investigated appellant's theft of NOV property—had a greater right to the stolen money and property than appellant:

> [Appellant] was accused, in essence, of being behind a false billing scheme, using his status as a plant manager for National Oil Well Varco or NOV to create a series of false billings for payment to a shell company, and to using company funds for purchase of personal items, between 2008 and 2011. The defense actually did not contest that this scheme

existed; it merely stated that the higher ups knew and consented to [appellant]'s dipping into company funds as it was a way to keep him quiet about blowing the whistle on sub-standard pipe his company had put into the market and for which it was investigated by the federal government. . . .

The alleged complainant in the indictment, Mr. Ortega, took the stand and functioned as an expert regarding the false invoices, and was permitted under Rule 1006 to use spreadsheets and summaries of the invoicing, as well as a chart prepared by the State, to lay out the scheme over defense objection. Other witnesses testified to the apparent lack of actual delivery of any of the supposedly purchased goods or the questionable nature of the items that [appellant] supposedly diverted for personal use, such as fishing supplies and a golf cart.

The defense attempted several times to connect the prior bad conduct of the company to the alleged consent by the NOV corporate supervisors as to [appellant]'s conduct, alleging that, in essence, this was "hush money" that they permitted to avoid him spilling the beans about their responsibility for unsafe piping materials placed into the market and in service in the dangerous oil and gas fields across the country and the globe. The trial court denied this, though it did permit his counsel to go into limited questioning of Ortega and some other witnesses as to whether they had any knowledge of such things.

At the end of the day, there was insufficient evidence that Mr. Ortega had any greater right to possession of the property than did [appellant].

The record reflects that, after NOV's accounting clerks recognized various irregularities in purchase transactions handled

by appellant and improper documentation of purchases he made from a company called B&L supplies, the Human Resource department and company auditors got involved.

Ortego is NOV's company auditor, and he began his investigation in April 2011. He examined 174 invoices that appellant approved for payments to B&L Supplies. Ortego discovered that despite NOV paying B&L $742,812.53 on these invoices, B&L never delivered the supplies to NOV that B&L billed it for. Ortego also discovered that B&L was owned by William Pidgen, a friend of appellant's, and that B&L operated out of a residence, with NOV being its only customer. When confronted, Pidgen admitted that the B&L invoices to NOV were fake, and that he and appellant split the proceeds from the false invoices.

Ortega testified that he discovered appellant stole from NOV with two additional fraudulent invoice schemes. Appellant purchased items for personal use for himself and his family members from Navasota Industrial Supply (NIS), while requesting that NIS submit multiple invoices to NOV to keep the amounts under the $5,000 threshold for NOV purchases appellant could approve. Appellant also formed another company, R.R.J. Hotshot & Trucking, and had NIS bill NOV for RRJ services that it did not actually provide.

Ortego testified that NOV's insurance policies covered about $750,000 in these theft losses, and that NOV was out-of-pocket for the $250,000 deductible.

## A. The Indictment

Appellant was indicted for theft exceeding $200,000, and the charging instrument identified Brad Ortega as the complainant:

> The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, ROYCE G. BINNION, JR., hereafter styled the Defendant, heretofore on or about BETWEEN MARCH 11, 2008 THROUGH MAY 2, 2011, did then and there unlawfully, pursuant to one scheme and continuing course of conduct, appropriate, by acquiring and otherwise exercising control over property, namely, MONEY, owned by BRAD ORTEGO, hereafter styled the Complainant, with the intent to deprive the Complainant of the property and the total value of the property appropriated was over two hundred thousand dollars.

## B. The Court's Charge and Jury's Verdict

The court's charge contained reference to the indictment language, and several definitions for the jury. This included,

> Our law provides that a person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property.

> Appropriation of property is unlawful if it is without the owner's effective consent.

> "Appropriate" means to acquire or otherwise exercise control over property other than real property.

> "Property" means tangible or intangible personal property including anything severed from the land, or a document, including money, that represents or embodies anything of value.

> "Deprive" means to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner.

> "Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater

right to possession of the property than the defendant.

"Possession" means actual care, custody, control, or management of the property.

"Effective Consent" means assent in fact, whether express or apparent, and includes consent by a person legally authorized to act for the owner. Consent is not effective if induced by deception or coercion.

. . . .

When amounts are obtained by theft pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense, and the amounts so taken aggregated to determine the grade of the offense and the value of property taken.

Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, the defendant, Royce G. Binnion, Jr., heretofore on or about between March 11, 2008 through May 2, 2011, did then and there unlawfully, pursuant to one scheme or continuing course of conduct, appropriate, by acquiring or otherwise exercise control over property, namely, money, owned by Brad Ortego, with the intent to deprive Brad Ortego of the property and the total value of the property appropriated was over two hundred thousand dollars; or if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, William F. Pigden, heretofore on or about between March 11, 2008 through May 2, 2011, did then and there unlawfully, pursuant to one scheme or continuing course of conduct, appropriate, by acquiring or otherwise exercise control over property, namely, money, owned by Brad Ortego, with the intent to deprive Brad Ortego of the property and the total value of the property ap-

propriated was over two hundred thousand dollars, and that the defendant, Royce G. Binnion, Jr., with the intent to promote or assist the commission of the offense, if any, solicited, encouraged, directed, aided or attempted to aid William F. Pigden to commit the offense, if he did, then you will find the defendant guilty of theft of property of the total value of over two hundred thousand dollars, as charged in the indictment.

The jury found appellant "guilty of theft of property of the total value of over two hundred thousand dollars, as charged in the indictment." Punishment was also submitted to the jury, which assessed punishment at 5 years' confinement and a $10,000 fine. The Court entered judgment on the jury's verdict, and appellant brought this appeal.

### ISSUES ON APPEAL

Appellant raises the following three issues:

1. "Under *Byrd v. State*, the State failed to prove that the alleged complainant, Mr. Ortega, had a greater right to the property than the Appellant."

2. "Under the due process clause of the United States Constitution, the trial court should not have permitted the named complainant to testify as an expert in his own case, as it did when it permitted Mr. Ortega to do so as the State's expert on the alleged fraud."

3. "Under *Potier v. State*, the trial court's refusal to permit introduction of evidence showing consent to the alleged misappropriation of goods and funds to silence Mr. Binnion as a whistle blower constituted a denial of a defense that violated due process."

## SUFFICIENCY OF OWNERSHIP EVIDENCE

Appellant's first issue challenges the sufficiency of the evidence that Ortega was the owner of the money stolen, as alleged in the indictment.

### A. Standard of Review

We review a challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 318–20, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010); *Ervin v. State*, 331 S.W.3d 49, 52–56 (Tex. App.— Houston [1st Dist.] 2010, pet. ref'd). Under the *Jackson* standard, evidence is insufficient when, considered in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 317–19, 99 S.Ct. at 2788–89; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from that evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to witness testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981); *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The *Jackson* standard defers to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778. An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See*

*Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982).

### B. Applicable Law

"A person commits [theft] if he unlawfully appropriates property with intent to deprive the owner of property." TEXAS PENAL CODE ANN. § 31.03(a) (West 2011). For purposes of this offense, an owner is defined as a person that "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEXAS PENAL CODE ANN. § 1.07(a)(35)(A) (West 2011).

It is undisputed that the money that appellant was charged with stealing belonged to appellant's employer, NOV. But because the indictment identifies Brad Ortego as the "owner" of the money appellant was charged with stealing, at issue here is whether the State established at trial that Ortego had "a greater right to possession of the property than" appellant.

### C. Analysis

Appellant argues that the Court of Criminal Appeals' opinion in *Byrd v. State* is controlling and mandates reversal here. 336 S.W.3d 242 (Tex. Crim. App. 2011). In *Byrd*, the defendant was arrested and charged with misdemeanor theft for allegedly shoplifting items from Walmart. *Id.* at 245. The information read, in pertinent part: "Lavonne Byrd, hereinafter referred to as defendant, with intent to deprive the owner, Mike Morales, of property, namely, three (3) pairs of pants and one (1) DVD, did unlawfully, without the effective consent of the owner, appropriate said property." *Id.* A loss-prevention officer for Wal-

mart testified at trial about witnessing the defendant's attempt to steal these items, and further testified that "Wal-Mart hadn't given her consent to take that property." *Id.* The jury charge tracked the information, including the allegation that the owner of the property was "Mike Morales," and the jury returned a guilty verdict. *Id.*

The problem, as pointed out by the Court of Criminal Appeals, was that there was no evidence about who Mike Morales was, much less evidence that he had a greater right than the defendant to possess the stolen property:

> At no time during the trial did anyone ever refer to a "Mike Morales." And no witness ever made any connection between a "Mike Morales" and Wal-Mart or any of the property that appellant shoplifted. No one—not the prosecutor, the defense counsel, the trial judge, or even the jury—seemed to notice this astonishing discrepancy between the allegation of "Mike Morales" as the owner of the property in both the information and the jury charge and the absence of any mention of him or his possible connection to the property at trial.

*Id.*

The *Byrd* court conducted an extensive analysis and reconciliation of legal-sufficiency standards, due process, and state law. *Id.* at 246. In so doing, it rejected the defendant's argument "that the name of the owner is a substantive element of the offense of theft." *Id.* at 251. Nonetheless, the court recognized that the Code of Criminal Procedure requires that the owner of stolen property be identified by name in the indictment. *Id.* (citing TEX. CODE CRIM. PROC. art. 21.08). Accordingly, the court held that "[a]lthough the *name* of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the *person*

(or entity) alleged in the indictment as the owner is the same person (or entity)—regardless of the name—as shown by the evidence." *Id.* at 252.

According to *Byrd*, the question is whether the deficiently drafted indictment, coupled with the trial transcript, would "prevent the state from charging [defendant] with a theft from Wal-Mart of one of the loss prevention officers who testified at trial?" *Id.* at 255. The court concluded that it would not. *Id.* The *Byrd* court thus reversed the defendant's conviction because "the State failed to prove appellant stole any property from Mike Morales, whom it had alleged as the owner of the shoplifted items." *Id.* at 257. "Because the State failed to prove that 'Mike Morales' had any ownership interest in the property that [the defendant] stole, the evidence [was] insufficient" and the defendant was entitled to an acquittal. *Id.* at 258.

Appellant in this case argues that *Byrd* is indistinguishable in that "the State did not provide that the named complainant was in fact the person with a greater right to the property than Appellant." Accordingly, he contends that he, like the defendant in *Byrd*, is entitled to an acquittal.

The State responds that *Garza v. State*, 344 S.W.3d 409 (Tex. Crim. App. 2011)—a case decided three months after *Byrd*—is instead dispositive and requires us to hold that the ownership evidence in this case is sufficient. *Garza* involved a business arrangement under which Hewlett Packard sold laptops to a school for its students. 344 S.W.3d at 411. Hewlett Packard provided a four-year warranty, and warranty repairs were done at the technology department at the school, which is where the defendant worked. *Id.* The school caught wind of irregularities with the warranty work and called Hewlett Packard to investigate. *Id.* Hewlett Packard's investigator, Dennis Leahy, discovered that parts were

wrongfully stockpiled in the technology department and that the defendant was committing warranty fraud. *Id.*

As in this case, the *Garza* defendant was charged with stealing from the investigator "Dennis Leahy" rather than from Hewlett Packard, Leahy's employer: "Appellant's indictment charged him with unlawfully appropriating property, namely money owned by Dennis Leahy, pursuant to one scheme and continuing course of conduct occurring on or about June 2, 2003 through August 30, 2005," and alleged that "the total value of the property appropriated was over two hundred thousand dollars." *Id.* at 410–11. The jury found the defendant guilty of theft "as charged in the indictment." *Id.* at 411.

The *Garza* defendant argued that (1) the evidence was legally insufficient to support the guilty verdict because the State failed to prove an essential element of the crime as indicted—that Dennis Leahy was the owner of the property, and (2) because Leahy was not employed by Hewlett Packer during the entire course of defendant's stealing, the State could not prove he was an owner of the property as "an employee of the corporation at the time of each theft." *Id.* Citing *Boyd*, the Court of Criminal Appeals reiterated that "[w]hile the name of the owner is not a substantive element of theft, the state is required to prove, beyond a reasonable doubt, that the person alleged in the indictment as the owner is the same person shown by the evidence presented at trial to be the owner by the evidence." *Id.* at 414. It noted, however, that "the legislature has given 'owner' an expansive meaning: anyone having a possessory interest in the property through title, possession, whether lawful or not, or a greater right to possession of the property than the defendant, is an owner of the property." *Id.* at 413 (citing Tex. Penal Code Ann. § 1.07(a)(35)(A)) Because

"possession" is defined to mean actual care, custody, control, or management, the court held that Leahy, as an employee of Hewlett Packard, could properly be designated as "owner" in the indictment. *Id.* (citing Tex. Penal Code Ann. § 1.07(a)(39)).

We agree with the State that there is sufficient evidence to support the jury's finding that Brad Ortego was the owner of the stolen funds. Unlike *Byrd*—a case in which the named "owner" of stolen funds was never mentioned or presented at trial to connect him in any way to his employer that was the actual victim of the theft— Ortego testified that he has worked for NOV for 23 years in the internal audit department as the investigation manager. He testified extensively about his role as agent of the company, his specific investigation into appellant's thefts, and specifically his greater right to possession of company funds than appellant:

Q. As a representative of the company are you—let me ask you this: Are you a representative of the company?

A. Yes.

Q. And as a representative do you have a right, as a representative, to collect or handle funds on behalf of your organization?

A. Yes, I can collect debts and things like that.

Q. So, you have a greater right to those funds as your capacity as an internal auditor with National Oilwell Varco?

A. Yes.

Q. Okay. Did you or did you find anybody at N.O.V. who granted Mr. Pigden the permission to take these funds?

A. No.

Q. And did you, or did you find that anybody at N.O.V., granted permission to [appellant] to take these funds?

A. No, ma'am.

It is within the jury's purview to draw reasonable inferences from "basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Because we conclude that there was sufficient evidence for the jury to conclude that Ortego was the owner of the stolen funds under Texas' definition of "owner" for purposes of theft, we overrule appellant's first issue.

## DUE PROCESS

In his second and third issues, appellant argues that his constitutional due process rights were violated by (1) the trial court's permitting Ortego to testify as an expert, and (2) the trial court's excluding evidence, resulting in his inability to advance a defense to his theft charges.

### A. Applicable Law

■ The Due Process Clause of the Fourteenth Amendment of the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The touchstone of due process is fundamental fairness. *Euler v. State*, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007).

### B. Ortega's testimony

■ In his second issue, appellant argues that the trial court's permitting Ortego, the complainant and a certified fraud examiner, to testify on his investigation and NOV's detection of theft violated his due process rights.

The State correctly responds that "the law has long allowed a complaint's testimony to stand as the sole evidence of guilt, and nothing prohibits a complainant from testifying based on specialized skill or knowledge." (citing *Garza*, 344 S.W.3d at 414) (agent for company could testify to value of stolen property, despite not being employed by the company for the on-going duration of thefts); *Lieber v. State*, 483 S.W.3d 175, 178 (Tex. App.—San Antonio 2015, pet. ref'd) (fair market value may be proven by owner's opinion of value of the property) (citing *Sullivan v. State*, 701 S.W.2d 905, 908 (Tex. Crim. App. 1986) ("It has long been the rule in this State that the owner of the property is competent to testify as to the value of his own property."); *Smiles v. State*, 298 S.W.3d 716, 719 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("Because such testimony is an offer of the owner's best knowledge of the value of his property, it is legally sufficient evidence for the trier of fact to make a determination as to value based on the owner's credibility as a witness.")).

In this case, the State did proffer an "Expert Witness Notice" stating that "the State intends to offer the expert testimony of Brad Ortego of [NOV] who is a certified fraud examiner who will give expert opinion on the investigation and detection of theft." At trial, however, the bulk of Ortego's testimony was factual. Ortega explained the systems in place at NOV for purchasing and reimbursements. He detailed what first brought appellant's schemes to NOV's attention, and how he went about investigating and documenting the extent of the thefts. He also detailed his observations and his investigation of false invoices used by appellant.

Appellant did not lodge a due-process objection to Ortega's testimony in the trial court, *see Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (absent unique circumstances not present in this case, due-process objections must be preserved), and nothing appellant cites demonstrates that Ortega's testimony was improper.

We overrule appellant's second issue.

### C. Exclusion of Defense Evidence

■ In his third issue, appellant argues that the trial court's exclusion of evidence

allegedly demonstrating that NOV consented to appellant's thefts as part of a scheme to silence him as a whistleblower violated his right to due process. The State responds that (1) the exclusion of evidence did not prevent appellant from presenting a defense and (2) the trial court correctly determined that the complained-of evidence was not admissible.

Appellant cites one case in support of his defense—*Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002). *Potier* recognized that exclusion of evidence in support of a defense implicates constitutional due process concerns "only if they significantly undermine fundamental elements of the accused's defense." *Potier*, 68 S.W.3d at 666 ("That [the defendant] was unable to . . . present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury."). Otherwise, the trial court "has broad discretion in admitting or excluding evidence." *Moreno v. State*, 944 S.W.2d 685, 691 (Tex. App.—Houston [14th Dist.] 1997) *aff'd*, 22 S.W.3d 482 (Tex. Crim. App. 1999). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement, i.e., if the "ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016).

We agree with the State that appellant has not demonstrated the exclusion of the complained-of evidence violated his right to due process, and that the trial court's exclusion was within the court's discretion.

The record reflects that appellant's lawyer's theme, from the beginning of his opening statement and throughout the trial, was that NOV looked the other way when appellant stole from NOV because NOV wanted appellant to quit complaining about safety issues. Appellant's brief acknowledges that his counsel was able to question witnesses about whether they knew of such an arrangement.

The trial court gave appellant's counsel considerable time to make arguments in support of emails and documents that appellant also wanted to admit into evidence about NOV's alleged bad acts. Ultimately, the trial court excluded documents that it concluded (1) related to quality issues at the facility appellant worked at, but were too remote in time to relate to this "consent" defense, and (2) documents and information about alleged bad acts by NOV that were not related to appellant or the facility at which he worked. Appellant has not demonstrated that the trial court deprived him of a right to put on a defense, *Potier*, 68 S.W.3d at 665, or that the court's decision was outside the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 83.

We overrule appellant's third issue.

## CONCLUSION

We affirm the trial court's judgment.