**Opinion issued June 15, 2021**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00427-CR

————————————

## EDWARD PAUL MIGUES, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 75603-CR**

---

## MEMORANDUM OPINION

A jury convicted appellant, Edward Paul Migues, Jr., of the offense of

aggregated theft, in an amount equal to or greater than $20,000 but less than

$100,000.[1]  Following a presentencing investigation, the trial court assessed his punishment at ten years' confinement, suspended his sentence, and placed him on community supervision for seven years.  The trial court also assessed a fine of $1,000.00 and ordered appellant to pay restitution of $21,315.19.  In his sole issue, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

The complainant, Michael Hanson, testified that his father, Roger Hanson, and a business partner, Bobby Brown, operating as SDI Sweeny LLC, owned a Sonic Drive-in restaurant in Sweeny, Texas (the "Restaurant").  And, they gave Michael a ten-percent interest in the Restaurant.  Michael testified that appellant was the general manager of the Restaurant and a "working partner," meaning that he did not purchase an ownership interest in the Restaurant but was entitled to bonuses, as a percentage of profits.  On July 19, 2011, after the Restaurant failed multiple food

---

[1]  *See* Act of May 29, 2011, 82d Leg., R.S., ch. 1234, § 21, 2011 Tex. Gen. Laws 3302, 3310 (amended 2015) (current version at TEX. PENAL CODE § 31.03(e)(5)); *see also* TEX. PENAL CODE § 31.09 (aggregation of amounts involved in theft). Because the offense at issue was committed prior to the effective date of the 2015 amendments, the previous version of section 31.03 governs.  Under the applicable version of the statute, the offense at issue constituted a third-degree felony.  *See* Act of May 29, 2011, 82d Leg., R.S., ch. 1234, § 21, 2011 Tex. Gen. Laws 3302, 3310 (amended 2015).  For clarity, we cite to the current version of the statute.

safety audits and the franchise license was in jeopardy, appellant's employment was terminated. And, Michael took over as manager of the Restaurant.

In March 2012, the bank holding the Restaurant's business account notified Roger that it had detected a number of atypical withdrawals from the account made by appellant. Michael noted that, during the period that appellant was managing the Restaurant, he was on the signature card at the bank solely for the purpose of making deposits and signing payroll checks. After appellant's employment was terminated, he had remained a signatory on the account in error. On March 12, 2012, Roger, Brown, and Michael executed a new signature card to remove appellant. Michael testified that, at Roger's and Brown's request, he filed a complaint with law enforcement about the money taken from the account. Later in 2012, the franchise was dissolved. In 2014, Roger died.

Dana Blackstock testified that, during the events at issue, she was the executive vice president of First State Bank. She testified that Roger, Brown, and Michael were on record at the bank as the owners of the Restaurant. Appellant was not listed as an owner. Although appellant was listed as an authorized signatory on the account, Blackstock noted that such did not constitute an ownership interest in the business or the account. In 2012, the bank detected transactions presenting against the Restaurant's business account that were atypical for the account. Testifying from "several hundred pages of records," which the trial court admitted

3

into evidence, Blackstock described individual electronic Automated Clearing House ("ACH") debits from the Restaurant's business account, namely, payments authorized over a telephone, occurring monthly between July 2011 and March 2012. The trial court admitted into evidence records of 62 withdrawals, occurring between July 11, 2011 and March 6, 2012, totaling $21,779.82. Blackstock testified that, in each case, the records showed that appellant made electronic payments on his personal credit cards from the Restaurant's business account. Blackstock contacted Roger, who stated that appellant's employment had been terminated and that neither he nor Brown had authorized the transactions. Blackstock testified about a technique, known as "structuring," in which money is stolen from an account in small increments over a period of time in order to avoid detection by the account holder or the bank.

Sweeny Police Department Detective Sergeant C. Beck testified that, in March 2012, Michael reported that money had been stolen from his family-owned business. Beck testified that, when a business reports a theft, it is customary to list the complainant as "the manager, loss prevention, whoever it is that files the complaint at the time," because they would have a greater right to possession than the person who committed the theft. In this case, he listed Michael Hanson and "SDI Sonic" as the complainants. Based on his investigation, Beck concluded that appellant had made unauthorized withdrawals from the Restaurant's business

4

account totaling over $21,000.00 and had used the money to pay his personal credit cards. The trial court admitted into evidence appellant's banking and credit card statements.

Appellant testified that, in 2009, Roger and Brown hired him to clean-up and re-open the Restaurant. He was the "general manager with a working partner agreement for 3 percent," which he characterized as an ownership interest in the Restaurant. He noted that although his interest was not reduced to writing, neither was Michael's interest, and Roger frequently made "handshake" agreements. Appellant had a close relationship with Roger and Brown, and he attended monthly partnership meetings, which Michael did not.

In 2011, after he developed differences with Roger and Brown, appellant decided to leave. He denied that he was "fired." He met with Roger and Brown, and together they decided that appellant would take his interest, valued at $20,000, in the form of $2,000 payments over a 10-month period because the restaurant could not afford to give him the total amount at once. Appellant testified that although this agreement was not written, "Roger and Bobby [Brown] were there, and we all agreed." Appellant admitted that he removed over $21,000 from the Restaurant's account and that he used the money to pay his personal credit cards. He also admitted that the sums he took exceeded his agreement with Roger and Brown.

**Sufficiency of the Evidence**

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction because a "rational factfinder could not find beyond a reasonable doubt that he acted without [the] effective consent of the principal owners."

### *Standard of Review and Governing Legal Principles*

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015); *Edwards v. State*, 497 S.W.3d 147, 156 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). Our role is that of a due process safeguard, ensuring only the rationality of the factfinder's finding. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the factfinder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The factfinder, as the judge of the facts and credibility of the witnesses, may choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We must resolve any

inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

A person commits the offense of theft if he "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE § 31.03(a). To "appropriate" means "to acquire or otherwise exercise control over property other than real property." *Id*. § 31.01(4)(B). Appropriation of property is unlawful, as pertinent here, if it is "without the owner's effective consent." *Id*. § 31.03(b). "Effective consent" includes consent by a person who is legally authorized to act for the owner. *Id*. § 31.01(3).

The term "owner" is defined as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id*. § 1.07(a)(35)(A). The name of the owner is not a substantive element of the offense of theft. *Byrd v. State*, 336 S.W.3d 242, 251 (Tex. Crim. App. 2011) ("The existence of the specific owner is an element, but not his name."). The Texas Code of Criminal Procedure requires the State to allege the

7

name of the owner in its charging instrument. *Id.* (citing TEX. CODE CRIM. PROC. art. 21.08). "[O]wnership may be alleged in either the actual owner or a special owner." *Id.* at 251–52. A special owner is a person who has actual custody or control of property that belongs to another person. *Id.* at 252. When an entity, such as a corporation, owns property, the traditional practice has been to allege ownership in a natural person acting for the corporation. *Id.* However, "it is perfectly permissible, and sometimes preferable, to . . . allege the corporation . . . as the owner of the property and then call any agent or employee who holds a relevant position in the company to testify that the corporation did not give effective consent for a person to steal or shoplift its property." *Id.* The State is then required to prove that "the person (or entity) alleged in the indictment as the owner is the same person (or entity)— regardless of the name—as shown by the evidence." *Id.* "In sum, it is the identity of the person, not his formal name, that controls and guides the sufficiency of the evidence review." *Id.* at 253.

A person acts intentionally when it is his conscious objective or desire to engage in the conduct or to cause the result. TEX. PENAL CODE § 6.03(a). "A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime . . . ." *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999); *Edwards v. State*, 497 S.W.3d 147, 157 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd).

When, as here, a defendant is charged with theft in an aggregated amount pursuant to one scheme or continuing course of conduct, the State is not required to prove each individual appropriation. *Kent v. State*, 483 S.W.3d 557, 561 (Tex. Crim. App. 2016); *see also* TEX. PENAL CODE § 31.09 ("When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense."). "As long as the jury unanimously agrees that the proven thefts that comprise the elements of aggravated-theft exceed the threshold amount and the thefts are proven beyond a reasonable doubt, regardless of which transactions each juror believes to have occurred, the aggregated theft is proved." *Kent*, 483 S.W.3d at 562.

*Analysis*

Here, the record shows, and appellant admits, that after he left the Restaurant's employ, he removed over $21,000 from its business account, through a series of small transactions over the course of nine months, as electronic payments to his personal credit cards. The trial court admitted into evidence records from the Restaurant's business account, showing that appellant made 62 withdrawals between July 11, 2011 and March 6, 2012, totaling $21,779.82. The trial court also admitted records from appellant's banking and credit card accounts. Blackstock and Beck each testified that the records showed that appellant withdrew money from the

9

Restaurant's business account to pay his personal credit cards. Thus, the evidence shows that appellant acquired or exercised control over the Restaurant's funds, as part of a continuing course of conduct, with the intent to deprive the Restaurant of the funds. *See* TEX. PENAL CODE §§ 6.03(a), 31.01(4)(B), 31.03(a), 31.09.

In addition, the evidence shows that appellant did so "without the owner's effective consent." *See id*. § 31.03(b). When Blackstock contacted Roger, he told her that appellant's employment had been terminated and that neither he nor Brown had authorized the transactions. And, Michael testified that appellant did not have consent to withdraw the sums at issue from the Restaurant's business account.

With respect to Michael's status as "owner," Beck testified that when a business reports a theft, it is customary to list the complainant as "the manager, loss prevention, whoever it is that files the complaint at the time," because they would have a greater right to possession than the actor. *See id*. § 1.07(a)(35)(A). Here, the indictment alleges both Michael Hanson and the Restaurant, "SDI Sonic," as the complainants. Michael testified that he held a ten-percent ownership interest in the Restaurant. In addition, at the time of the events, Michael was managing the Restaurant. Blackstock testified that Roger, Brown, and Michael were on record at the bank as the owners of the Restaurant, and appellant was not. Michael testified that he, as a minority partner and manager, was acting for the Restaurant in filing the criminal complaint. The record shows that appellant's employment was

10

terminated on July 19, 2011, and he made the withdrawals at issue between July 11, 2011 and March 6, 2012.

Because the evidence shows that Michael had a right of control and possession of the Restaurant's funds superior to any such right of appellant, the evidence is sufficient to show that Michael was the owner or was acting as a special owner. *See id.*; *Byrd*, 336 S.W.3d at 252; *see also Binnion v. State*, 527 S.W.3d 536, 543 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (holding evidence sufficient to support jury's finding that company's investigation manager had greater right of possession of company funds than had defendant plant manager, who created series of false billings for payment to shell company and used company funds for purchase of personal items); *Miller v. State*, 909 S.W.2d 586, 596 (Tex. App.—Austin 1995, no pet.) (holding evidence sufficient to show that president of corporation was special owner of currency stolen from corporation and noting that exclusive control of property need not be vested in owner).

On appeal, appellant argues that the evidence is legally insufficient to show that he took the money without the owner's effective consent because the evidence shows that, when he decided to leave the Restaurant, he met with Roger and Brown, who were the principal owners. And, together they decided that appellant would take his three-percent interest, valued at $20,000, in the form of $2,000 payments over a 10-month period because the restaurant could not afford to give him the whole

amount at once. Appellant asserted that, although the agreement was never reduced to writing, "Roger and Bobby [Brown] were there, and we all agreed." He noted that Roger frequently made "handshake" agreements, that Michael's own partnership interest was not written, and that Michael was not present at the monthly partnership meetings or the meeting to mutually dissolve appellant's interest.

The record shows that Roger, Brown, and Michael were on record at the bank as the owners of the Restaurant. However, appellant was not listed as an owner. Appellant removed the funds at issue from the Restaurant's business account through a series of 62 withdrawals over a nine-month period. Blackstock testified about a technique, known as "structuring," in which money is stolen from an account in small increments over a period of time to avoid detection by the account holder or the bank. Appellant admitted that the total sum he took, and several of the monthly totals, exceeded his alleged verbal agreement with Roger and Brown.

The jury, as the judge of the facts and the credibility of the witnesses, could have reasonably concluded that the evidence did not support appellant's version of the events and could have reasonably chosen to believe Michael's version. *See Sharp*, 707 S.W.2d at 614; *Johnson v. State*, 734 S.W.2d 199, 203–05 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd) (holding evidence that defendant president of corporation executed 54 transfers of money from corporate account into his personal account, labeled "loans" but with no repayment terms and without any record of

12

authorization, was sufficient to support that defendant acted with intent to deprive corporation of money and that he acted without its effective consent).

In sum, from the evidence, the jury could have reasonably concluded that appellant, through a continuing course of conduct, unlawfully appropriated property with the intent to deprive the owner of the property. *See* TEX. PENAL CODE §§ 31.03(a)–(b), 31.09. We hold that the evidence is legally sufficient to support appellant's conviction for the offense of aggregated theft, in an amount equal to or greater than $20,000 but less than $100,000. *See Jackson*, 443 U.S. at 318–19; *Nowlin*, 473 S.W.3d at 317; *see also* TEX. PENAL CODE §§ 31.03(a), (e)(5); 31.09.

We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Countiss.

Do not publish. TEX. R. APP. P. 47.2(b).